[Parker v. Hubbard.]

# Parker *v.* Hubbard.

*Application for Mandamus to Clerk of County Board of Revenue, in matter of Warrant for County Claim.*

1. *Repealing statutes by implication.*—The repeal of statutes by implication is not favored: it is only when there is an irreconcilable conflict between two statutes, and when a reasonable field of operation can not be found for the later, that it is allowed to repeal the former by implication.

2. *County claims; under general statute regulating fine and forfeiture fund in Montgomery, and under special statute for relief of Robert Parker.*—The act "to regulate the fine and forfeiture fund of Montgomery county," approved January 28, 1879 (Sess. Acts 1878-9, p. 246), abolished the preference theretofore given to county claims first registered, and provided for a competitive system among the persons holding claims against the county, whether registered or unregistered, by which payment would be first made to him who would accept the smallest per cent. in full satisfaction of his claim ; and the special statute "for the relief of Robert Parker," late coroner of said county, approved February 13, 1879 (*Ib.* 482), directed the county Board of Revenue "to examine and audit the account of Robert Parker, for expenses incurred and services rendered by him as coroner for said county, and which would have been proper charges against the fine and forfeiture fund of said county, and for which he has received no compensation," and to "draw their warrant in his favor, on the treasurer of said county, payable out of the fine and forfeiture fund of said county, for the amount that may be allowed and audited by said Board of Revenue." *Held,* that there was no irreconcilable conflict between the two statutes ; that, under their operation, while all registered claims were not entitled to preference over Parker's, his was not entitled to a preterence over them, but he was simply placed on an equality with the holders of other claims, and entitled to the same rights given to them by the former statute.

3. *When mandamus lies.*—When a county board of revenue is authorized and required, by a special statute, to audit and examine a particular claim against the county, and to draw their warrant on the county treasurer, in favor of the claimant, for the amount allowed by them ; having audited and allowed the claim, they may themselves draw their warrant on the treasurer, or order it to be drawn by their clerk, or ministerial officer ; and having ordered it to be drawn by their clerk, if he refuses to draw it in proper form, the claimant can not have a *mandamus* from the Circuit Court to compel him, but must first ask for a peremptory order from the board of revenue.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This was a petition by Robert Parker, duly verified by affidavit, asking a *mandamus,* or other appropriate writ, against Samuel D. Hubbard, as clerk of the Board of Revenue of Montgomery county, requiring him to sign and deliver to the petitioner a warrant on the county treasurer, under the facts stated in the opinion of the court. The court below sustained a demurrer to the petition, and its judgment is here assigned as error.

BRAGG & THORINGTON, for appellant.—1. The special act for the relief of Robert Parker gives, and was intended to give him, a right to have his claim paid in full out of the fine and forfeiture fund, without any reference to the condition of other claims against that fund—a preference and priority over other claims, which, under the provisions of the general law, must submit to a considerable reduction to secure an early payment. The General Assembly has absolute power over the disposition of this fund, and may discriminate among different claims on it.—*Palmer v. Fitts*, 51 Ala. 489. This power was exercised in favor of Parker, by the terms of this special act, whose claim was thereby recognized as meritorious, being for necessary public services, for which he had never received any compensation. The object and intent of the act are apparent on its face, and it makes no reference to the general statute passed a few days before. The rule applicable to the construction of statutes *in pari materia*, does not apply to these two statutes, one of which is private, and confers special individual rights on a particular claimant; while the other is a general and public statute, relating to all claims against the county, and regulating the county finances generally.—Sedgwick on Stat. and Const. Law, 248-9. Any construction which would engraft the special on the general statute, would entirely defeat the operation and effect of the former, and is therefore to be avoided.—*Thompson v. The State*, 20 Ala. 54. Under the general statute, which relates only to claims then existing, all such claims are required to be registered within sixty days after notice, to be given by the clerk of the Board of Revenue; while the special statute relates to one particular claim, to be afterwards audited and ascertained, but does not specify any time within which this must be done; and if its allowance only puts it on a footing with other claims under the general statute, it might be barred before its allowance. So far as the claim of Parker was a proper charge against the fine and forfeiture fund, no special act was necessary to put it on an equality with other claims against that fund. A reference to the legislative journals, of which the court will take judicial notice, will show that the bill, as originally introduced, provided for the payment of this claim out of the general county fund; and that it was amended by limiting it to the fine and forfeiture fund, against which it was recognized as a proper charge.

2. The demurrer to the petition admits its allegations to be true. The petition shows that the Board of Revenue has performed its duty, and that the clerk, its ministerial officer, refuses to perform the ministerial duty required at his hands.

[Parker v. Hubbard.]

*Mandamus* is the appropriate remedy to compel the performance of this duty.

D. S. TROY, *contra.*—1. The petitioner does not show any right to a *mandamus* against Hubbard, who is the mere ministerial officer of the Board of Revenue, and who is not shown to have violated its orders. The Circuit Court has a general controlling power over "inferior jurisdictions," and the Board of Revenue is an inferior jurisdiction subject to this control. But the petitioner does not ask any relief against that tribunal, and does not show that it has refused to make its clerk do his duty.

2. The petitioner was not entitled to any other warrant, than that tendered to him by Hubbard. The special act for the relief of the petitioner does not declare that his claim shall have preference and priority over all other claims against the county ; though such words, or similar words, would be the simplest and most natural mode of expressing the idea for which the petitioner contends, and are generally (if not universally) used in private statutes having such a purpose. There is nothing in the special statute which shows an intention to interfere with the system established by the general statute, and there is no necessary inconsistency or repugnancy between the two.

STONE, J.—The "act for the relief of Robert Parker, late coroner for the county of Montgomery," approved February 13, 1879, authorized and empowered the Board of Revenue of Montgomery county "to examine and audit the account of Robert Parker, for expenses incurred and services rendered by him as coroner for the county of Montgomery, and which would have been proper charges against the fine and forfeiture fund of said county, and for which he has received no compensation." The act then directs that the Board of Revenue shall "draw their warrant, in favor of said Robert Parker, on the treasurer of said county, and payable out of the fine and forfeiture fund of said county, for the amount that may be allowed and audited by said Board of Revenue." Pamph. Acts 1878-9, page 482.

The petition in this case represents, "That pursuant to the provisions of said act, the said Board of Revenue has examined and audited the account of petitioner [Parker] mentioned in said act, and the amount allowed and audited by said board in favor of petitioner is the sum of one thousand and thirty-two and 75–100 dollars." Petition then averred, that a warrant was thereupon demanded of Hubbard, clerk of said Board of Revenue, on the treasurer of

said county, for the sum so awarded ; that it was the duty of said clerk, among other things, to issue warrants on claims audited and allowed by said board ; that "by virtue of the direction, authority, and practice of said Board of Revenue, it was and is the duty of said clerk to sign and issue lawful and proper warrants on all claims allowed and audited by said Board of Revenue, and to sign and issue to petitioner the said warrant tendered to said clerk by petitioner ;" that said clerk signed and tendered to petitioner a warrant for the proper amount, but on its face made payable "out of any moneys in the fine and forfeiture fund, not required to pay registered claims against said fund, as now required by law ;" and that said clerk refused to issue his warrant to petitioner in any other form. Petitioner refused to accept this warrant, and tendered to said clerk, to be signed by him, a warrant in the following form : "The treasurer of Montgomery county, when in funds, will pay to Robert Parker, or order, one thousand and thirty-two and 75--100 dollars, from the fine and forfeiture fund of said county, in pursuance of an act of the General Assembly of Alabama, approved the 13th day of February, 1879." This, Hubbard refused to sign. The prayer of the petition was for a *mandamus* to Hubbard, commanding him to sign the warrant tendered. There was a demurrer to this petition, which the Circuit Court sustained ; and Parker brings the case here by appeal.

We do not think the warrant tendered by Hubbard was a compliance with the statute. The legal effect of its terms would have been to constitute all registered claims, against the fine and forfeiture fund, preferred claims over that of Parker. We can not think this was the intention of the legislature.

The petitioner contends that the effect of the special statute, the substance of which is given above, is to give to him a right to demand and have payment thereof, out of the fine and forfeiture fund, paramount to other claims on that fund : in other words, to make it a preferred claim. To this it is objected, for the Board of Revenue, that under the "act to regulate the fine and forfeiture fund of Montgomery county, and the disposal of moneys arising from fines, forfeitures, and convict labor," approved January 28, 1879 (Pamph. Acts 246), the moneys accruing to the fine and forfeiture fund must be expended under the provisions of that statute. To this it is replied, that the special act for the relief of Robert Parker is of later date than the general statute above referred to ; that the provisions of the two acts are incompatible, and that the later enactment repeals by implication all the provisions of the former to which it is repugnant.

[Parker v. Hubbard.]

To this it is rejoined, that the two acts are not repugnant, but may well stand together.

Repeal of statutes by implication is not favored in the law; and it is only when there is an irreconcilable conflict that the later repeals the older enactment, by implication. If we can find a reasonable field of operation for the more recent statute, without displacing, or colliding with the provisions of the previous law, the conclusion is that the legislature intended both statutes should stand. In such case, there is no repugnancy, and no repeal by implication.—2 Brick. Dig. 463. "When the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all."—Sedg. Stat. and Cons. Law, 2 ed., 98, and note a; *State, ex rel. v. Bishop*, 41 Mo. 16.

We do not think there is any repugnancy between these two statutes, when properly construed. The general statute furnishes persuasive evidence that the aggregate of proper claims against the fine and forfeiture fund of Montgomery county was disproportionately large, and it provided for a competitive system among the creditors, awarding first payment to him who would submit to the heaviest discount from the face of his claim. It obliterated the preference given to claims first registered, save in case of a tie, and directed payment of registered claims to be first made to him who proposed to accept the smallest per cent. in full liquidation. It did not propose to determine what were, or were not, proper claims against that fund, but left that subject as previous legislation had defined it. Its provisions embrace all claims against that fund, whether registered or unregistered at the time of the enactment. All, upon registering their claims, could bid for the money belonging to that fund, as the same might be advertised and offered from time to time.

The special statute for the relief of Robert Parker indicates that his claim was for services previously rendered, and that either the treasurer refused to recognize it as a valid, subsisting claim, or that it was in such form that Parker could not successfully assert it, or have it registered. There is no general statute, requiring or authorizing claims against the fine and forfeiture fund to be audited. The statutes provide other methods for their authentication.—Code of 1876,

§§ 4460-62, 5046; Pamph. Acts 1865-6, 470. Hence, we are led to infer there was some obstacle in the way of the successful assertion of Mr. Parker's claim, and that on this account the statute was procured to be enacted. This view receives further confirmation in the language of the statute, which directed the Board of Revenue to audit Parker's claim for expenses incurred, &c., which *would have been* proper charges against the fine and forfeiture fund of said county. If his claim consisted of charges confessedly chargeable on that fund, and if there was no impediment in the way of its operation, there would have been no need of the statute, or that the claim should be audited. This, we suppose, furnished the reason for the passage of the act for the relief of Robert Parker, which we are construing. There is nothing in the special statute which, in terms, repeals any former law, and nothing which asserts that this shall stand as a preferred claim on the fine and forfeiture fund. The legislature has frequently declared that certain classes of claims shall be preferred; but they have always done so in express language. We presume the legislature would not have enacted the statute in question, if the treasurer had allowed the claim, or the Board of Revenue had felt itself authorized to audit and examine it. This furnishes to the act for the relief of Robert Parker a field of operation, without disturbing or impairing the provisions of the act to regulate the fine and forfeiture fund of Montgomery county. We do not think the statute makes petitioner's a preferred claim. It enables him to have it put in form to be registered, with all the rights which the general statute secures to all other owners of registered claims against that fund. The words, 'when in funds,' found in the warrant tendered to Hubbard for signature, are beyond the language or purpose of the statute, and should have been omitted.

The words of permission and authorization employed in this statute must be construed as mandatory.—2 Brick. Dig. 462, §§ 29, 30; Sedg. Stat. and Const. Law, 2 ed., 376. The statute made it the duty of the Board of Revenue to examine and audit the claim; and if they had declined to obey its direction, they could have been coerced to do so. The Board of Revenue performed this duty, and ascertained the amount due. This being done, a single duty remained; that of drawing "their warrant in favor of said Robert Parker, on the treasurer of said county, and payable out of the fine and forfeiture fund of said county," for the amount allowed. This is a mere ministerial duty, and could be performed by the board directly, or through Hubbard, their clerk, as they might elect. But, whether drawn in one form or the other,

it was the act of the board, and not the act of the clerk. If the petitioner failed to obtain the warrant he was entitled to, his recourse was on the Board of Revenue ; and, until he demanded such warrant from the Board of Revenue, and failed to obtain it ; or, until he sought unsuccessfully to obtain from that body its mandatory order, compelling their clerk to issue the proper warrant, he fails to show a right to the writ of *mandamus*. One court will not interfere with, or cause the performance of mere clerical duties of another tribunal, judicial in its nature and functions, until that tribunal has been unsuccessfully applied to, to command and compel its own ministerial agent to perform the duty.—*Mansony, Ex parte*, 1 Ala. 98 ; *Lehman, Durr & Co. v. Robinson*, 59 Ala. 219, 245.

It is contended for appellant that the petition in this case does show in effect that the Board of Revenue had done its duty, and made the proper order for the issue of the warrant, and that nothing remained but for the clerk to issue the warrant to which appellant was entitled. The language relied on as supporting this view is : that "by virtue of the direction, authority, and practice of said Board of Revenue, it was and is the duty of said clerk to sign and issue lawful and proper warrants on all claims allowed and audited by said Board of Revenue, and to sign and issue to petitioner the said warrant tendered to said clerk by petitioner." We are inclined to construe this language as affirming the nature and scope of the duties of the clerk, rather than as an averment that the Board of Revenue had directed their clerk to issue the warrant in the form claimed. But, conceding that the averment is the equivalent of a statement that they had directed their clerk to issue a warrant in the form demanded, it does not aid the petitioner's case. It still fails to show that petitioner had applied unsuccessfully to the Board of Revenue, for an order compelling their clerk to issue the proper warrant. Until he had made such application, and failed, petitioner had no right to appeal to the Circuit Court.

It is contended for appellant that the act "to regulate the fine and forfeiture fund of Montgomery county," approved January 28, 1879, provides only for the payment of claims then existing, and makes no provision whatever for claims afterwards to accrue against that fund. On this the argument is made, that the effect of our ruling is to exclude the Parker claim from all participation in the competitions for the moneys realized, and from time to time advertised and offered to the highest bidder. We need not consider, in this case, whether that is the proper construction of the statute,

[Broughton v. Mitchell.]

and whether further legislation is or is not necessary. The present claim was in existence when that statute was enacted. Whether it had been registered or not, it was within the provisions of that statute; for it is in express terms made applicable to all claims against the fine and forfeiture fund, "whether registered or unregistered."

The judgment of the Circuit Court is affirmed.