# City of Birmingham *v.* Southern Express Co.

### *Action to Recover License Tax.*

(Decided Dec. 21, 1909. 51 South. 159.)

1. *Statutes; Construction; Legislative Intent.*—Where the language of the statute is clear and unambiguous, there is no room for construction, and it is only where the meaning and intent are not obvious, that the courts must attempt to arrive at the legislative intent.

2. *Same.*—Though other meanings may be possible of inference the clearly expressed meaning of a statute and the intent of the legislature must prevail in its construction.

3. *Same; Spirit or Letter.*—As a matter may be within the letter of the statute and not within its spirit or may be within the spirit of the statute and not within its letter, the courts in construing the statute look to the context, the spirit and the whole of the statute as well as to other statutes in arriving at the true intent of the legislature.

4. *Same.*—Two or more statutes which are in pari materia must each be looked to in ascertaining the meaning and intent of each.

5. *Same; Separate Statutes.*—Each statute constituting a part of a system of laws must be so construed as to make the system consistent in all its parts, and each must be considered a part of the whole, practically.

6. *Same; Implied Repeal; Same; Legislature.*—Two statutes relating to taxation, licenses, etc., enacted by the same legislature must both be given effect if practicable and consistent with sound construction, especially where neither repeals the other expressly.

7. *Same.*—It is only where two statutes are so repugnant to each other that it must be presumed that the legislature intended that the latter should repeal the former, that a repeal by implication exists, and where there is a reasonable field of operation for both under a just construction, both will be given effect.

8. *Same; Special and General Statutes; Construction.*—Special provisions relating to specific subjects control general provisions relating to general subjects, and things especially treated are considered as exceptions to the general provisions.

9. *Same; Implied Repeal.*—Where a specific subject has been explicitly provided for by law, it is not considered repealed by a subsequent law dealing with a general subject in a general way, though the specific subject may be included in the general subject.

10. *Same.*—Section 2086, Code 1907, is not repealed by the Municipal Code Act, Section 1339, Code 1907.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

34—164

[City of Birmingham v. Southern Express Co.]

Action by the city of Birmingham against the Southern Express Company to recover a license or occupation tax. Judgment for defendant and plaintiff appeals. Affirmed.

R. H. THATCH, for appellant.—The municipal Code Act was intended as a substitute for all former acts relating to and governing municipal corporations, and hence, all such former acts are repealed thereby.—*Ward v. Parker*, 45 South.; *Ogburn v. Ogburn*, 50 Ala. 616; *Cahill v. C. M. B. Assn.*, 61 Ala. 232; *Lemay v. Walker*, 62 Ala. 39; *Edson v. The State*, 134 Ala. 53. The implication is that all exemptions in the power of the municipal corporation in the state to levy a tax.—*Mayor & Aldermen of Birmingham v. Klein*, 89 Ala. 461; *City of Montgomery v. Shoemaker*, 51 Ala. 114; *D. & F. S. R. R. Co. v. Kennerly*, 74 Ala. 583; 1 L. R. A. 244; Cooley on Taxa. 146. The act must be construed as if not incorporated in the Code.—*Rayford v. Faulk*, 45 South. 714; *B. & B. Sup. Co. v. Lucas*, 119 Ala. 202.

JOHN LONDON, and MCDANIEL, ALSTON & BLACK, for appellee.—Counsel give a history of the various laws as to occupation and franchise taxes and insist that it was double taxation, and cite.—*Tenn. v. Whitworth*, 117 U. S. 129; *Ga. R. & B. Co. v. Wright*, 125 Ga. 589; *Board of Revenue v. Monthomer L. Co.*, 62 Ala. 269; Ray on Limitation of Taxing Power, Sec. 1356. They insist that the general provisions and statutes yield to special ones so far as necessary to effectuate the particular purposes of the latter.—*City of Austin v. Cahill*, 88 S. W. 542; *Callaghan v. McGowan*, 90 S. W. 319; *State of Neb. v. Cornell*, 39 L. R. A. 513. As to the construction of statutes they cite.—Sutherland on Sta. Constr., Sec. 363-4-9. And

[City of Birmingham v. Southern Express Co.]

on legislative intent they cite.—*Cocciola v. Wood-Dick-erson*, 136 Ala. 532; *U. S. v. Freeman*, 3 How. 565; *Thompson v. The State*, 20 Ala. 54. They insist that the acts are to be taken in pari materia.—Sutherland on Constr. of Statute, Secs. 443-4; *Cincinnati v. Carnival*, 44 N. E. 582. So a statute must be considered in reference to the whole system of which it is a part.—26 A. & E. Ency. of Law, 620. They insist that repeal by implication is not favored, that where there are two acts on the same subject the rule is to give both effect if possible.—*Bd. of Health v. Vineland*, 5 Atl. 174; 103 N. Y. Supp. 843; *Riggs v. Brewer*, 64 Ala. 282; *Barker v. Hubbard*, 64 Ala. 203; *Abernathy v. The State*, 78 Ala. 11. Applying these rules it is insisted that perfect harmony can be produced by judging that the authority conferred by section 1339 of the Code of 1907 is limited by the maximum amount set out in section 2086, Code 1907.

MAYFIELD, J.—Section 2086 of the Code of Alabama of 1907 provides for the levy and collecting of an annual state license or privilege tax of $4,000 for express companies to do business in this state. The same section provides that, in addition to this state tax, the several cities of the state may each levy and collect of such companies a like tax, based on and graded by the population, as fixed by the federal census of 1900, and fixes the amounts of the tax according to a given population, to wit, those of 500 or less, $2.50, and so on, thus increasing the amount as the population increases, until the highest amount is reached, which is $500 for those having a population of over 30,000. This statute was first passed February 18, 1893 (Acts 1892-93, p. 693), was codified in the Code of 1896, and therein appeared as section 3914. It was thereafter amended by act of

March 4, 1903 (Acts 1903, p. 189). As thus amended it was again codified, and, as amended by the code committee, now appears as section 2086 of the Code of 1907. This statute also has a judicial and constitutional, as well as legislative, history.

The statute, as originally passed, was first construed in the case of *Douglass v. Anniston,* 104 Ala. 291, 16 South. 133. The statute in that case was held to be a substitute for all previous laws authorizing the levy and collection of privilege and license taxes from express companies, the previous history of which is traced and reviewed in that case. The statute in that case was held, not only to repeal all general laws on that subject, but all local and special as well; that is, all the provisions of the charters of the hundreds of municipalities which authorized the levy of such taxes upon express companies. All municipalities were thereby deprived of the right to so tax or regulate express companies. Many of the municipalities, at the next session of the Legislature after the decision of this court in the *Douglass Case,* had their charters amended, or re-enacted, so as to avoid the general statute, or to amend it in so far as that particular municipality was concerned, in order to allow them to again tax and regulate express companies. Among these was the city of Tuscaloosa. After its charter was thus amended, so as to allow it to levy a privilege tax on express companies, it proceeded to levy tax upon the Southern Express Company, which the company declined to pay, on the ground that the provision of the subsequent local statute was void, in that it was an attempt to amend the general statute without setting out so much thereof as was amended, as required by the Constitution, and in that it was in violation of section 2 of article 4 of the Constitution of 1875. The trial court upheld the local stat-

ute. On appeal to this court, the opinion being written by Justice Sharp, the judgment of the lower court was affirmed; but on an application for rehearing the majority of the court held that the local statute was unconstitutional and void, in that it was an attempt on the part of the Legislature to violate section 50 of article 4 of the Constitution of 1875—that is, that the local statute authorized a municipality to pass a law inconsistent with the general law of the state.

These statutes, the general and the various local statutes, as to taxing express companies, and these two decisions, above referred to, no doubt led to, or caused, the adoption of section 221 of the Constitution of 1901, which prohibits the Legislature from making the payment of one privilege or license tax in lieu of all other privilege and license taxes. This constitutional provision no doubt called forth the statute of 1903 (Acts 1903, p. 189). It, as will be seen, attempts to deal with the whole subject of privilege and license taxes against express companies. It not only authorized, but fixed and graded the amount of taxes for all municipalities, as well as that part of the state tax. Whether that part of this statute which provides that the taxes fixed by it shall be in lieu of all other taxes, except an ad valorem tax, on the tangible and intangible property of express companies, is valid or not, it is not now necessary for us to decide.

This statute, as it is now written, was adopted as a part of the Code on the 27th day of July, 1907 (see act adopting Code, preliminary matter in volume 1, Code 1907). This Code went into effect on the 1st day of May, 1908. Consequently the act of 1903, unless otherwise repealed, remained the law from the date of its passage till the Code went into operation. So far as this case is concerned, the two provisions, the Code and

original statute, are the same. The original manuscript prepared by the code commissioner for the Code of 1907, contained no new Municipal Code law other than the statutes and Code provisions then existing; but in accordance with the act under which this Code manuscript was prepared by the commissioner, he was required to make a report to the Governor of his work, and to file his report and his manuscript for the new Code with the Governor 90 days before the Legislature of 1907 convened. This act further required that this report should show the changes made, or suggested, in the Code and statutory law by the manuscript, and that the commissioner should draft certain bills which he deemed proper to complete or perfect the Code law proposed by him, which he did not deem proper to insert in the manuscript, and to recommend to the Governor the passage of such bills as were thus drafted and proposed by him. Among the great number of bills so drafted and proposed by the commissioner was a Municipal Code bill, which was practically the one known as the "Walker Bill," which passed the House at the session of 1903, but which for some reason failed of passage in the Senate.

The Legislature, at its session in 1907, did not adopt or enact the bill proposed by the commissioner; but prior to the recess of that session it passed a great number of general bills relating to municipalities, some of which were practically certain provisions of the Walker bill; but none of them attempted a codification or re-enactment of the whole law relating to municipalities. Before recess, however, the Legislature appointed a special committee to sit during the recess and to prepare and draft a general law to provide for the organization of municipalities, the government and control thereof, and to prescribe their rights, powers, and

duties. This was done by the committee, which reported back to the Legislature, after recess, a general bill on this subject known as the "Municipal Code Bill.' It provided, as was intended, a complete system of laws for the government and control of all municipalities. It intended a uniform system of laws for the government of all municipalities. Prior to this time each municipality was almost exclusively provided for by a special statute called its "charter," no two of which were alike in all respects; hence the municipal law of the state was different in every city and in nearly every town. A few of the smaller towns were organized under a general statute which provided therefor, but only very few. There were also a few general statutes made applicable to all municipalities, but very few. Every city had its charter, and the charter was its code of laws.

This bill, as reported by this special joint committee, known as the "Municipal Code Committee," with some amendments, passed the Legislature and was approved on the 13th day of August, 1907, 17 days after the Code of Alabama was adopted. So the Municipal Code never became a part of the Code of Alabama. While, under an act passed thereafter which provided for the publishing and printing of the new Code of Alabama, it was provided that all general laws of a permanent nature passed by that session of the Legislature after the 9th day of July, 1907, should be divided into sections, headlined and numbered, and published and printed as a part of the printed copies of the Code of Alabama, this was only for convenience, so that all the general laws might be included in the printed volumes of the Code. The Municipal Code bill was one of the numerous and copious laws which had to be so published and printed with the Code of Alabama. It forms 396 sections of the

printed volumes of the Code, numbered from 1046 to 1442.

Most all of the laws passed at the general session of the Legislature of 1907, prior to recess, were practically, if not literally, inserted in the Municipal Code bill. If not so substituted and thus re-enacted, they were clearly repealed by the Municipal Code act, and hence they were omitted from the printed copy of the Code; otherwise there would have been printed in the Code two separate laws relating to nearly every subject of municipal law. Among these laws thus omitted from the printed copies of the Code, though it is in the Code as adopted, is the act of March 6, 1907, authorizing municipalities to levy and collect privilege and franchise taxes on all trades, business, avocations, etc. This act was clearly and certainly superseded by section 97 of the Municipal Code bill, which appears as section 1339 of the printed Code of Alabama. While there are some differences in the two provisions, they are practically the same. One difference necessary to note is that the Municipal Code provision expressly provides that the municipalities may fix the amount of the license or tax, while the act of March 6, 1907, did not so expressly provide. The municipal Code provision also contains this clause, which is not contained in the act of March 6, 1907; that is, the municipalities may license all trades, businesses, etc., "not prohibited by the Constitution or laws of the state."

The city of Birmingham, acting under section 97 of the Municipal Code bill, now section 1339 of the printed Code of Alabama, levied a license tax of $1,000 upon express companies doing business in that city. The Southern Express Company declined to pay the amount levied, but offered and tendered the amount of $250, as provided by section 2086 of the Code. The city brought

suit against the express company to recover the $1,000 fixed by its ordinance. The trial court decided the issue in favor of the express company, from which judgment the city appeals.

The questions for decision are: Which of these two statutes controls, if they conflict? Are they so conflicting or repugnant that both cannot stand? Is there a field and scope of operation for both?

That construction of statutes is correct that gives to each the effect which the statute maker intended. The intent of the lawmaker is the law. Courts are to construe and interpret the meaning of statutes, and then declare the intent of the lawmaker, which is the law. If the meaning of the words or language used by the lawmaker is clear and certain, then there is no room or occasion for construction or interpretation. It is only when the meaning of the language and intent of the lawmaker is not obvious or certain that courts are needed or required to interpret. Where the meaning of the language used, or the intent of the lawmaker, rests in inference, then construction and interpretation are useful. If the meaning or the intent is obvious and clearly expressed, then it does not rest in inference. The clearly expressed meaning or intent must and should prevail, though others could be assigned. If one meaning be certainly expressed, and another left to inference, the one expressed should prevail.

This rule of construction does not imply that the letter shall control the spirit. A thing may be within the letter of a statute and not within the meaning or spirit, or it may be within the clear meaning or spirit and not within the letter. Courts, in construing statutes, often look less to the letter than to the context, the spirit, or to the meaning of the statutes to arrive at the true intent of the lawmaker. Statutes are often drawn inarti-

ficially. Apt words are not always used, and perspicuity and precision are not always observed by those who draft statutes. The whole statute under construction, as well as others, must sometimes be looked to, to ascertain the true meaning and intent.—*Thompson v. State,* 20 Ala. 54; *Atkins' Case,* 18 Wall. 301, 21 L. Ed. 841.

Two or more statutes or laws are often in pari materia, and where they are they should all be looked to, in order to ascertain the meaning and intent of each. Such are clearly the two statutes in question. They were both enacted by the same Legislature; they both relate to the same subject of taxation, license or privilege taxes upon trades, businesses, etc., and neither expressly repeals the other. Both should therefore be given effect, if practicable and consistent with sound construction or good reason.

Repeal by implication is not favored. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended that the latter should repeal the former. This is never the case if there be a reasonable field of operation, by a just construction, for both; for then they will both be given effect. This is preferable to repeal by implication.—*Riggs v. Brewer,* 64 Ala. 282; *Herr v. Seymour,* 76 Ala. 270; *Wyman v. Campbell,* 6 Port. 219, 31 Am. Dec. 677. Each statute which constitutes a part of a system of laws should, if practicable, be so construed as to make the system consistent in all its parts; each is thus considered a part of the whole.

Special provisions relating to specific subjects control general provisions relating to general subjects. The things specially treated will be considered as exceptions to the general provisions. When a specific subject has been specially provided for by law, it will not be

considered as repealed by a subsequent law which deals
with a general subject in a general way, though the spe-
cific subject and the special provisions may be included
in the general subject and general provisions.—*Parker
v. Hubbard,* 64 Ala. 203; *Montgomery v. B. & L. Assn.,*
108 Ala. 336, 18 South. 816.

Applying these rules of construction to the statutes
in hand, we are impelled to the conclusion that section
2086 of the Code controls as to the amount of licenses
or privilege taxes which a municipal corporation may
levy upon or collect of express companies doing busi-
ness in such municipality. It appears that the question
of privilege or license taxes which should be levied or
collected of express companies has been a subject of
constant and special interest to the Legislature for the
last 15 or 20 years. It has been time and time again
singled out from all other subjects of taxation and from
all other subjects of privilege and license taxes, and
made a specific subject for special legislation. It also
appears that, as to the amount of the privilege or license
taxes which express companies should be required to
pay to municipalities in which they do business, the
Legislature for a number of years has seen fit to fix it it-
self, or to fix a basis or schedule, graded according to
the population of the municipality, according to which
the amount of such taxes is named and fixed by the stat-
ute. The Legislature has not seen fit to delegate to the
municipality the power to fix the amount of this license
or privilege tax, as it has done as to all other businesses,
trades, and occupations.

There are obvious and cogent reasons for this dis-
tinction. Express companies are common carriers,
quasi public corporations. For this reason the Legisla-
ture has the power to fix the tolls or rates which they
can charge the people for the doing of this public service

in which they are engaged. The charges which an express company can collect have been so regulated by statute. Being a public service corporation, engaged in the business of a common carrier, if it does an intrastate business, so as to be liable to a license or privilege tax to the state or to its various municipalities, it must do business in many municipalities within the state, and thus be liable to many of such taxes. Unlike most businesses, it cannot be confined to any one city, because of the very nature of its business. If an express company does an intrastate business in one municipality in Alabama, in order for such business to be profitable to the company or useful to the public, it, of necessity, must do business in all cities within the state reached by railroads, and in most all the municipalities so located. The public, as well as the express company, has an interest in seeing that the companies are not taxed out of existence by these hundreds of municipalities. If the companies cannot do business in all or most of the cities in the state, the business of necessity will be less profitable to the company and less serviceable to the public. If it be left to one municipality, it could probably tax the company out of the state, as well as out of the municipality. It could thus cripple the public, as well as the express company.

If the amount of taxes which an express company must pay in order to do business in Alabama is not fixed or certain, or even ascertainable, but depends entirely upon the caprice, the mere "ipse dixit," of every municipal corporation reached by a railroad, express companies probably could not afford to do an intrastate business here, and the public would thus be deprived of one of the public necessities of the age. Alabama would certainly be placed at a great disadvantage if express companies could not do business within the state. Ex-

press companies may not, in the abstract, be a public
necessity. Possibly the railroads could do the business
which they do; but as a matter of fact they do not do it,
and the business done by them is certainly one of the
prime public necessities. It may be said that the Legis-
lature could tax them out of the state as easily as, or
more so than, could the municipalities. That may be
true; but it is not so apt to do it, as is well illustrated
in the present case. The Legislature fixed the tax for
Birmingham at $250; the municipality fixed it at $1,-
000, just four times as much. Suppose every other mu-
nicipality does likewise; is it reasonable to suppose that
the companies could do business in this state?

But, granting that the aggregate amount would be
the same, or even less, if fixed by the municipalities, still
it would then always be uncertain and unknowable un-
til actually levied by each; whereas, by the present rule,
it can be known exactly in advance. But, aside from
this consideration, it is, we think, reasonably certain
that the two statutes are not conflicting. One is specific,
definite, and certain; the other is as general as it is pos-
sible for it to be. For the specific and certain provision
as to express companies to be read into the general one
by construction as an exception thereto leaves both stat-
utes in full force and effect—clearly what the Legisla-
ture intended. This is clear by the historical reference
heretofore made as to the two statutes. They were both
substantially passed twice by the same Legislature,
neither directly or specifically referring to the other.
They were both revised and codified by the same legis-
lative committee, and allowed to stand as revised. The
fact that the latter, as last passed by the Legislature,
provided that the municipalities could fix the amount
of the license taxes, which was not so expressly provid-
ed as first passed, makes no difference. That express

[City of Birmingham v. Southern Express Co.]

provision could be stricken out without affecting in the least the efficacy of the statute. The power to levy a license or privilege tax necessarily carries with it the power to fix the amount. The amount is a necessary part of the levy. The amount of such taxes for the other hundreds of trades or businesses is not otherwise fixed by law. The Municipal Code bill, as a whole, or this section, would be just as effectual and just as powerful with the phrase "to fix the amount of licenses" left out as with it in. The power to license or tax as to this kind of tax, as to which the rate is not otherwise fixed, necessarily implies to the power to fix the amount thereof.

Both sections 2088 and 1339 of the Code authorize the municipalities to levy the tax. Section 2086 is limited exclusively to this one subject of license tax, to wit, express companies. Section 1339 deals with every conceivable business or trade subject to this kind of tax, necessarily including hundreds, if not thousands. Surely it would be a constrained and unreasonable construction to hold that such a general statute as this would repeal by implication another statute as definite, specific, and certain as is section 2086, when they can each stand without offending the other in the least, and when it is made to appear almost beyond doubt that it was the lawmakers' intention that both should stand.

The judgment of the lower court is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON, ANDERSON, MCCLELLAN, and SAYRE, JJ., concur.