147 So. 187

## UNION CENTRAL LIFE INS. CO. v. STATE ex rel. WHETSTONE, Tax Assessor.

6 Div. 170.

Supreme Court of Alabama.

Jan. 12, 1933.

Rehearing Denied April 13, 1933.

Coleman, Spain, Stewart & Davies, of Birmingham, for appellant.

Thos. E. Knight, Jr., Atty. Gen., Frontis H. Moore, Asst. Atty. Gen., and Jelks H. Cabaniss, Matt H. Murphy, W. J. Wynn, and T. A. McFarland, all of Birmingham, for appellee.

**THOMAS, Justice.**

This appeal presents for review the interest of a mortgagee in seeking to redeem from tax sale, and the right of assessment of the land as an escape. The essential facts for an understanding of the case may be stated in short as follows:

On May 23, 1929, the property was sold for state and county taxes due for the year 1928; was bought in by the state for $149.20; reported by the judge of probate to the state auditor and by him on August 1, 1929, forwarded to the tax assessor on a descriptive list of lands so reported to him as bid in for the tax year 1928, and as required to be so reported by the act of 1919 (Gen. Acts 1919, p. 360, § 269). The tax assessor compared this list and noted thereon his "fair valuation" on this property, and returned the list to the auditor, and also a copy thereof to the judge of probate. The judge of probate nor the auditor did not make further entries on that descriptive list or their books, as the taxes accruing thereon at such "fair valuation" made and noted by the tax assessor.

A day or so before the expiration of the two years for redemption, on May 22, 1931, the auditor sold and transferred the tax certificate of purchase by the state to one Clapp, for the sum of $173.07, and of this action and consideration thereof the defendant-appellant had actual notice—that is, of the transfer of the certificate for the amount of purchase and interest, aggregating $173.07.

It is admitted that the auditor failed on such sale and transfer, to collect from that assignee, Clapp, the full amount of taxes due on the property for the subsequent years, viz. for 1929, 1930, and 1931, which had not been paid by the assignee or any other person to the state. The agreed statement of facts shows that appellant paid, on June 8, 1931, to such assignee, a week or so after the expiration of two years from the sale, a sum equal to said taxes, or $638.29, *on purchasing from the latter* her tax purchase certificate which she had acquired from the state for $173.07; that this purchaser and transferee had no official connection with the state, and was in her own behalf in collecting such excess sum to that bid by the probate judge for the state at tax sale.

The instant proceeding was instituted by the tax assessor of the county where the land is situated and under the act of 1923 (Gen. Acts 1923, pp. 152, 175, § 39), and as the discovery by that official of such property as escaped taxation for the years 1929, 1930, and 1931.

It is apparent that the questions presented are:

(1) Can the auditor assign such certificate of purchase by the state, as provided by section 260 of the act of 1919 (Gen. Acts 1919, p. 358), without requiring payment of accruing taxes to the date of purchase and for that tax year, as provided by section 269 of the same act?

(2) The auditor, *failing to obey* the provisions of section 269, by adding the subsequent taxes on the certificate or collecting such taxes from the purchaser of the tax certificate, and *transferring* that certificate upon payment of only the amount of the initial taxes and interest named in the certificate (one year's taxes for 1928), *must the tax assessor, on discovering that fact*, assess that property for the intervening years as an escape of the property from taxation under the provisions of section 39 of the act of 1923 (Gen. Acts 1923, pp. 152, 175)?

It will be noted that the provision of the statute (sections 3120–3123, Code) to the effect that, when the sale is made by the auditor and *after the expiration* of two years from such sale, no person entitled thereto had redeemed, etc., will not be considered here, as the sale of the tax certificate was before the expiration of two years from the tax sale.

 The statutes presenting a comprehensive system for affording the public revenue are contained in the Code and in the revenue statutes not so included. Code, § 12; Acts 1919, p. 1066, § 14; Board of School Com'rs of Mobile County v. American Surety Co. of N. Y., 220 Ala. 458, 125 So. 906; State v. Acacia Mut. Life Ass'n, 214 Ala. 628, 108 So. 756; City of Montgomery v. American Ry. Express Co., 219 Ala. 476, 122 So. 639. The governmental policy as to such matters

is to be found in these legislative acts on the same subject and construed together in pari materia as a part of one system. State v. Stonewall Insurance Co., 89 Ala. 335, 7 So. 753; Brown, Ins. Commissioner, v. Protective Life Ins. Co., 188 Ala. 166, 171, 66 So. 47; Ex parte State (State v. Lovejoy), 188 Ala. 401, 66 So. 1. If there is a conflict the last expression of the legislative will must control. Brandon, State Auditor, v. Williams, Judge, 157 Ala. 386, 47 So. 199. Hence the provisions as sections 3107–3111 and sections 3120–3123 of the Code will be considered in pari materia with sections 260, 269, and 300–303 of the acts of 1919 (pp. 358, 360, 370, 371) to maintain a harmonious system for taxation, redemption of lands from tax sale, sale of certificate of purchase at tax sale, and sale after two years from tax sale of unredeemed lands purchased by the state at tax sale. In this wise only can the expressed public policy and will of the Legislature be obtained under the construction placed by this court on pertinent provisions of such statutes.

It is sufficient to observe, that the instant property was assessed for taxation for the years 1927–28; was delinquent January 1, 1929; was sold for taxes May 23, 1929, and the purchaser's certificate thereof to and by the state was delivered by the probate judge to the tax collector, who, in turn, duly delivered the same to the state auditor as required by law. It is further shown by the agreed statement of facts that the state auditor, *though receiving the valuation of these lands from the tax assessor as provided by statute* (section 278, Revenue Compilation of 1929; Gen. Acts 1919, § 269, pages 360, 361), did not in all respects comply with the statute relating thereto, as we shall now indicate.

Among other things, that statute (section 269, Gen. Acts 1919, pp. 360, 361) provides: "The county tax assessor shall put a fair valuation on the remainder of the lands contained in such descriptive list; and shall enter such valuation and shall calculate the taxes upon such descriptive list and return the same to the State auditor, who shall thereupon, and annually thereafter until such land is redeemed or recovered, or sold by the State, without further assessments, add the amount of the taxes so assessed on such valuation to the amount for which the lands were sold, and such proceedings shall have the effect of a due assessment of taxes against said lands. The assessor shall furnish to the judge of probate a copy of the list returned to the State auditor, and it shall be the duty of the judge of probate to enter the taxes therein calculated on the record of sale thereof kept in his office."

The provisions of section 260, Gen. Acts 1919, p. 358, under which the auditor purported to act, are: "The certificate of purchase delivered by the tax collector to the purchaser at such sale, or to the State, in case the State is the purchaser, is assignable in writing or by endorsement, and if the State is the purchaser such assignment shall be made by the State auditor upon the payment of the amount bid by the State, with interest thereon at the rate of eight percent per annum, and the assignment thereof vests in the assignee and his legal representatives all the right and title of the original purchaser or of the State, in case the State is the purchaser."

The Act of August 22, 1923 (Gen. Acts 1923, p. 152), was to further provide for the general revenues of the state, and in no wise affected the terms of the act of 1919 in respects here pertinent, as to its sections 260 and 269.

It is conceded that sections forming a part of the same act, or class of enactment, so related in time and substance, are pari materia, and considered together in the ascertainment of the legislative will, and that each is given a field of operation, if it can be consistently done within the rules of construction that obtain to such subject-matter. Fidelity & Deposit Co. of Maryland v. Farmers' Hardware Co., 223 Ala. 477, 136 So. 824; Crow, Tax Collector, v. General Cable Corporation, 223 Ala. 611, 613, 137 So. 657, and authorities; City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159; Tucker v. McLendon, 210 Ala. 562, 98 So. 797; State ex rel. Scholl v. Duncan, 162 Ala. 196, 50 So. 265; State ex rel. Tyson v. Houghton, 142 Ala. 90, 38 So. 761; 11 Mich. Digest, Alabama Reports, 1102, 1103, 1114.

Be it remembered, as observed, that the sale of the State's tax certificate was before, and *not after, the expiration of the two years* for redemption, and not under the provisions of sections 301, 302, and 303 of the Gen. Acts of 1919, page 371, and the construction thereof of a kindred statute in Crebs v. Fowler, 148 Ala. 366, 42 So. 553. In that case, however, it was held that such assignee did not take title or the state's lien, when the sale was "prematurely made." There are other decisions bearing analogy. Drennen v. White, 191 Ala. 274, 279, 68 So. 41; Harton v. Enslen, 182 Ala. 408, 62 So. 696. Otherwise stated, a tax sale made by the state auditor, not in substantial compliance with the statute, viz. as here, for an amount less than that authorized by law, is void. Crebs v. Fowler, supra; Copeland v. Bond, 155 Ala. 571, 46 So. 853; Street v. Doyle, 187 Ala. 332, 65 So. 775; Bolling v. Smith, 79 Ala. 535. The case of Brandon, State Auditor, v. Williams, Judge, 157 Ala. 386, 47 So. 199, was that of a sale by the auditor after the two-year period had expired and under sections 302, 303, Gen. Acts 1919, p. 371; Code, §§ 3120–3125.

And it may be well to observe here that it is established that estoppels against the state are not favored, and this rule is based

upon public policy for the enforcement of a public right or to protect a public interest. State ex rel. Martin v. City of Gadsden, 216 Ala. 243, 113 So. 6; City of Enterprise v. Rawls, 204 Ala. 528, 86 So. 374, 11 A. L. R. 1175; City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 So. 816; Deal v. Houston County, 201 Ala. 431, 78 So. 809; Pearson v. Duncan & Son, 198 Ala. 25, 73 So. 406, 3 A. L. R. 242; Fields v. Altman, 193 Ala. 160, 69 So. 543, Ann. Cas. 1918B, 189; General Electric Co. v. Town of Fort Deposit, 174 Ala. 179, 56 So. 802; State ex rel. Lott v. Brewer, 64 Ala. 287.

Adverting to the statutes (sections 260, 269. Gen. Acts 1919, pages 358, 360) considered in pari materia, when construed together, the auditor, in transferring the tax certificate to one applying for purchase within two years of the sale, was required to collect on the assignment to Clapp, the purchaser of the tax purchase certificate (1) only the amount of the state's bid at tax sale, with interest to date, if no *subsequent taxes had accrued on the property so valued, as under the provisions of section 269*, Gen. Acts 1919, pages 360, 361; (2) if at the time of the purchase of the certificate subsequent taxes had so accrued under the value placed thereon as required of the tax assessor, then the purchaser must be required to pay the initial sum of the initial purchase at tax sale, and interest thereon, the subsequently accruing yearly taxes, and the respective sums of interest due or accruing thereon.

A reasonable construction of the act and its declared legislative intent may be given the several provisions of the statute (sections 260, 269, Gen. Acts 1919, pages 358, 360), which would not authorize, within two years of such tax sale, the assignment by the state auditor of the certificate of the state's purchase at tax sale (1) without the collection of the amount bid by the state at tax sale and interest thereon; and (2) the collection of the taxes thereafter accruing at the same property valuation and lawful rate for the time that had intervened, measured in tax years. The legislative intent was to incorporate into the statute a just, reasonable, and consistent plan of assessment and collection of taxes free from evasions, within the limit of two years from the tax sale, where the state was the purchaser, and likewise where a third party was the purchaser. It is patent that such purchaser of the tax sale certificate from the state, within two years of the sale, whether a third party or the state purchased at tax sale, was not armed with the right of authority to collect from the owner, mortgagee, or other party redeeming, the state, county, or municipal taxes not paid by such purchaser.

Stated otherwise, the statutes (sections 260, 269, Gen. Acts 1919, pp. 358, 361), construed together as to the effect of the assignment of the certificate, if made according to the statutes, vest in an assignee or his legal representative the right and interest evidenced by the certificate of the original purchaser, whether that purchaser at tax sale was the state or a third party. Such duly assigned certificate does not evidence a greater right when the state purchases than when a third party purchases. That is to say, if a third person had purchased at tax sale, no serious contention could be made *by his assignee*, that there was acquired the right to collect on redemption the state and county taxes for the succeeding tax years of 1929, 1930, 1931. The conveyance executed by the judge of probate was careful to recite the facts and is within the construction we have given, that only the right for delinquent taxes for 1927–28 was dealt with, and interest thereon subsequent to the tax sale to the expiration of time to redemption by the mortgagee may only be demanded and collected under the statute.

In Threadgill v. Home Loan Co., 219 Ala. 411, 122 So. 401, it was observed that the purchaser at the state auditor's private sale cannot claim from the redeeming owner interest on a greater sum than the assessed valuation, "such purchaser being estopped to claim interest on any greater sum than that at which the property was assessed." There is analogy to be found in that decision, though the construction was of section 3120 of the Code, where the sale was made by the auditor after two years from the tax sale had expired, and the effort for redemption was by the owner against the tax purchaser claiming lien of statute. In the instant case the sale by the auditor was not of the land, but of the tax sale certificate, and within two years of the tax sale. In such a case, the provisions of sections 260, 269, Gen. Acts 1919, pp. 358, 360, 361, are to be applied.

The question recurs: Was there an escape from taxation as affecting these lands for the years 1929, 1930, and 1931, in the sense that the tax assessor was authorized to make the assessment?

The proceeding required by section 269 of the Act of 1919, pages 282, 360, does not constitute a real property assessment in the general sense employed in the statute; and we have indicated that it was a method of taking account or ascertainment of taxes for subsequent years in the event the auditor made a sale of the tax certificate, or sale of the land after the expiration of two years from tax sale. And the purchaser of the tax certificate only acquired the state's right and title incumbered by the subsequently accruing taxes, and incumbered by the right of the state through its authorized agents to assess

for the escaped taxes not paid on the sale of the certificate, or thereafter accruing and not paid.

The deed to appellant from the probate judge passed no absolute title, only a right that may or may not have resulted in perfection of title. The deed was authorized in its execution, only under and according to the authority of the act (Gen. Acts 1919, pp. 282, 360, § 266). And section 266 of the act (Gen. Acts 1919, p. 360) required the "return of the certificate and payment of a fee of one dollar to the judge of probate." If, therefore, as we have indicated, the "returned certificate" was not in material respects as required by section 269 (Gen. Acts 1919, pp. 360, 361) of said act, it was void or not sufficient to support and authorize the issue of the deed, in that it has been declared that a probate judge's deed is void if issued on the basis of an invalid certificate of purchase. Copeland v. Bond, 155 Ala. 571, 46 So. 853; Bolling v. Smith, 79 Ala. 535.

It is important at this junction that we indicate the proceeding taken, or omitted to be done or taken, by the tax collector, the probate judge, and the state auditor, affecting these lands and the certificate of purchase, as required by the statute, section 269, Gen. Acts 1919, pp. 360, 361: (1) The tax assessor, after entering his valuation on the descriptive list sent him by the auditor, *failed to "calculate the taxes upon such descriptive* list"; (2) the probate judge *did not "enter the taxes calculated"* on the descriptive list and on the records required to be kept in his office of such lands; (3) the state auditor *made no annual entry in his office*, on the certificate, by way of adding the amount of taxes so assessed on such valuation to the amount for which the lands were sold, and transferred the certificate of purchase without the collection of the taxes that had accrued at the time of the sale of that certificate of purchase.

If it be conceded, that the failures, in respects indicated, by the tax assessor and the probate judge, to make the respective entries required of them, were mere irregularities under section 269 of the act of 1919, we hold that the statutory requirements of the state auditor, that he make the annual entries before and to the time of redemption of the taxes so assessed on such valuation and amounts for which the land sold, are necessary and material to the due collection of the taxes, on the sale of the certificate of purchase. Such proceedings on the part of the auditor should have been taken and done to "have the effect of a due assessment of taxes against the land," and to prevent the assessment from being an escape by the tax assessor. Had the auditor performed his duty as required by the statutes, the land would not have escaped from taxation on the sale of the certificate and redemption by one having that right. The statutory duty was imposed upon and required of the auditor to protect the state in the collection of its taxes for the two years in which redemption might have been effectuated before an auditor's sale. If the auditor had so complied with the law, there would have been no escape from taxation or failure of the collection of taxes that had accrued when the tax certificate of purchase was sold and transferred before the two-year period had expired and at a time when sections 260 and 269 of the act of 1919 (pages 358, 360, 361), had application.

The latest expression of the legislative intent is further indicated by the codification of sections 3120, 3122, of the Code, departing in material aspects from sections 300 and 302 of the act of 1919 (pages 370, 371). The pertinent provision is as follows: " * * * The state auditor, with the approval of the governor, may sell the same at private sale to any purchaser who may pay therefor in cash to the treasurer such sum of money as the state auditor may ascertain to be sufficient to cover and satisfy all claims of the state and county, which sums shall not be less than the amount of money for which the lands were bid in by the state, with interest thereon at the rate of ten per cent per annum from the date of sale, together with the amount of all taxes due on said lands since date of sale, with interest thereon at the rate of eight per cent per annum from maturity of such taxes." Section 3120, Code 1928.

The two sections must be construed in pari materia and to avoid conflict if possible. It is clear, however, that the legislative intent is given expression in sections 3120, 3111, of the Code as to the amount to be required would cover accrued taxes and interest, as clearly stated to the end of a due assessment for collection of taxes or notation and collection of taxes by the auditor.

The expressions in the several statutes outlining the duties of the tax assessor as to escaped property, and last given statement in the Revenue Act of 1923 (Gen. Acts 1923, pp. 152, 175, § 39), are in part, "Whenever the tax assessor shall discover *that any property has escaped taxation in any assessment* within five years next preceding the current year, he shall list, return and value said property for assessment for the years *during which same has escaped taxation,"* etc. (Italics supplied.)

The "descriptive list assessment" was not made as required by statute by the auditor, was therefore not an assessment having the force and effect of an ordinary real property assessment, and did not prevent the tax assessor from assessing the property as delinquent, and the sale of the tax certificate of sale without collection of the taxes by

the *auditor, all of which* brought the case within the terms of the statute. That is, there being no agency for the enforcement of collection of the taxes for the two years, the case was brought within the class of escapes from taxation, which warranted the tax assessor in subsequently assessing the property as he did for the years 1929, 1930, and 1931, under the provisions of Gen. Acts 1923, p. 173, § 34, for state and county; Gen. Acts 1919, p. 303, § 58; p. 304, § 61; p. 349, § 224, for municipality, and section 2142, Code 1923.

In response to insistences of counsel, it may be said that the assessments as escapes for the tax years 1929, 1930, and 1931, were not void on the ground that the state held the tax purchaser's certificate for the default in taxes for the year 1928. When the deed was made by the judge of probate, it was or was not an indefeasible title, depending upon the substantial compliance with the requirements of the statute during the process of collection of taxes that had defaulted. If there had not been observation and compliance with such substantial requirements of the statute, though the deed was executed and delivered by the judge of probate, it was without authority of law, and did not carry the title. Bolling v. Smith, 79 Ala. 535; Copeland v. Bond, 155 Ala. 571, 46 So. 853; Morris v. Waldrop, 213 Ala. 435, 105 So. 172.

In the purchase at tax sale, the state only acquired a defeasible title, evidenced by the initial state tax purchase certificate; the attempted assignment of the certificate without substantial compliance with the provisions of the statute but evidenced the original interest or right acquired by the state at tax sale, only an inchoate right that would ripen into title by compliance with the statute as provided, and the due execution of the deed by the judge of probate pursuant to the statute. By virtue of the noncompliance with the material provisions of the statute by the state auditor, neither the state nor its assignee, Clapp, was the owner of the land for the years 1929–1931, which would have prevented its assessment by the tax assessor as an escape from taxation.

The abandonment or surrender of the right of taxation is never presumed; it must be shown that such was the legislative intent by him who asserts the exemption. Anniston City Land Co. v. State, 160 Ala. 253, 48 So. 659; Morris v. Waldrop, supra.

The authorities are abundant that the burden is upon the party claiming under a tax title to show the necessary and substantial compliance therewith of the statutes culminating in such sale, and that a strict construction of such proceeding has been enjoined by the courts in determining the question of regularity and validity, whether the requirements of law have had compliance. Gunter v. Townsend, 202 Ala. 160, 79 So. 644; Galloway Coal Co. v. Warrior Black Creek Coal Co., 204 Ala. 107, 85 So. 440; Drennen v. White, 191 Ala. 274, 68 So. 41; Smith v. Cox, 115 Ala. 503, 22 So. 78; Morris v. Waldrop, supra; Doe ex dem. Standifer v. Styles, 185 Ala. 550, 64 So. 345.

The principle reaffirmed in State v. Mortgage-Bond Co. of New York, 224 Ala. 406, 140 So. 365, is to the effect that assessments and valuations of property for purposes of taxation by duly constituted authorities or agencies, being judicial in nature, is conclusive, unless impeached for fraud or want of jurisdiction, or reversed by an authorized tribunal, and decides that a recent statute enlarging escapes as to personal property in Jefferson county was not retrospective. That decision is not controlling here.

The analogy insisted upon in argument and said to be presented by Perry County v. Selma, Marion & Memphis Railroad Co., 58 Ala. 546, 560, 561, is not apt. There the state auditor was charged with duties of assessment of railroad property, *and the tax assessor had no duties to perform in that behalf,* as to the original or escaped assessments. The holding was that the property had already been assessed for taxes (such being the ascertained fact), and, under the former system of taxation, the tax assessor had no duties to perform as to the subject and property of the railroad.

Though the escape assessment statute has long been a part of the taxing statutes, it is now a part of an extended system for providing revenues for the state.

Under the instant statutes (Gen. Acts 1923, p. 175, § 39; Gen. Acts 1919, pp. 358, 360, §§ 260, 269, and sections 3120–3123, Code 1928), when construed in pari materia with the other provisions making such new and completed system of taxation, the tax assessor had the authority to make the assessment, and holding, as we do, that there was an escape by virtue of the auditor's failure to make the required assessment and to collect the accrued taxes thereon with interest, on transfer of the certificate, and that the tax assessor on discovery of this fact was required to make the assessment, as was done by that official and justified by the trial court, it follows that the judgment of the lower court was free from error, and should be affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.