CITY OF LITTLE ROCK v. PARISH, COUNTY CLERK.

1. MUNICIPAL CORPORATIONS: *Jurisdiction to ascertain boundaries of*
   Whether a municipal corporation has definite boundaries, and what they are, is for the courts, and not the legislature, to determine.

2. CITY OF LITTLE ROCK: ' *DuVal's addition a part of.*
   On the passage of the act of April 20, 1873, for the addition of territory to municipal corporations, "DuVal's addition" to the city of Little Rock became and continued a part of the city, and was not cut off, as was attempted, by the act of March 9, 1877, "to define the boundary of the city," the act being unconstitutional.

APPEAL from *Pulaski* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*Basham*, for appellant:

Act of March 9, 1877, unconstitutional. It is a *special*

City of Little Rock v. Parish, County Clerk.

act. *Art. XII, sec.* 2; 20 *Ohio St.*, 18; 4 *Kansas*, 124; 5 *Ia.*, 603; 15 *Ohio St.*, 21; 2 *Dillon, Ct. Ct. Rep.*, 353.

Organization of corporations must be by "general laws," *Art. XII, sec.* 3, *Const.* Boundaries fixed in the general law of March 9, 1875, *sec.* 5.

Legislature can pass no special act conferring corporate powers (*Art. XII, sec.* 3), nor pass a special act, where a general act can be made applicable. (*Ib., Art. X, sec.* 25). Courts competent to judge of this. 9 *Iowa*, 4, 104; 19 *ib.*, 43.

Operation of general law can not be suspended for the benefit of a particular individual, etc. *Const., supra.*

*F. W. Compton,* for defendant:

Boundaries must be fixed and certain. *Dillon on Mun. Cor.;* 7 *Vt.*, 471; 10 *ib.*, 480.

The *finding* of the legislature, that the boundaries were uncertain, can not be disputed. 19 *Barb.* (*N. Y.*), 88; 34 *Barb.* (*N. Y.*), 137.

Legislature must determine whether a special act will be necessary in any case. 1 *Kansas*, 178; 29 *Ind.*, 409; 37 *ib.*, 163; 7 *Nev.*, 23; 26 *Iowa.*

The territory rejected is not in the city, the law adding it being repealed. *Gantt's Digest, secs.* 3317 *to* 3332; *Pamph. Acts of* 1875, *p.* 1, *sec.* 94.

### STATEMENT.

EAKIN, J. The appellant applied by petition to the circuit judge, for a writ of mandamus against the county clerk, showing:

That, in 1872, Benj. T. DuVal laid off certain property adjacent to the city, into lots and blocks, for the purpose of adding them thereto, under the name of "DuVal's addition," and made out his bill of assurance and caused it to be recorded, with a plat of the property as laid off, in the recorder's office of the county.

It claims that, by virtue of the act of April 28, 1873, said addition became a part of the city, and shows that persons residing therein afterward paid city taxes, and received all the benefits of incorporation. The addition included a certain block, numbered 426.

The city and county officials continued to recognize said addition, and to collect taxes on the property so added, including said lot, until the passage of an act of the general assembly, on the ninth day of March, 1877, entitled, " an act to define the boundary line of the city of Little Rock," whereby said addition was placed outside of the city limits, after which the county clerk refused, and still refuses, to extend the city taxes upon the tax-books over said addition, that the same may be collected by the collector. It prays a peremptory mandamus, compelling him to do so.

Waiving any order to show cause, the defendant appeared, and demurred to the petition for want of facts sufficient to show a cause of action. The court sustained the demurrer, and the plaintiff having declined to amend, refused the writ and dismissed the petition.

Whereupon the city appealed.

OPINION.

The constitutional and statutory provisions, affecting the questions presented, will be set forth in the course of this opinion.

It is first contended by the appellee, that, conceding all the facts, it still does not appear that the territory in question was a part of the city at the date of the passage of the act of 1877, which excludes it, and that complainant is not entitled to the relief sought, whether said act be constitutional or not.

The constitution of 1868 required all corporations to be

City of Little Rock v. Parish, County Clerk.

formed under general laws, which might be, from time to time, altered or repealed.  *Art. V, sec. 48.*

Under that, general laws, for the purpose, had been passed, and all municipal corporations in the state brought under them.  On the twenty-eighth of April, 1873, an additional general act was passed, to provide for *adding* territory to cities of the first class, to which Little Rock belongs.

The first section of that act provided that all tracts of land, adjacent to such a city, which " *is* or shall be" laid off into lots, etc., " shall be, and the same is hereby declared to be, a part of said city," and shall become incorporated with it, and be " subject to all the power, authority, jurisdiction, franchises, liabilities and ordinances, governing such city."  This provision plainly applies to the case of voluntary action on the part of the owner of the soil, and such action in laying off his property, was taken as significant of his consent and design that it should become a part of the city.  The allegations in this case make the intent of DuVal indisputable, as well as the assent of the city, so that it can not be questioned that, on the passage of the act, DuVal's addition became and continued a part of the city.

The second and third sections of the act provided for the incorporation of adjacent territory, on the petition of *a majority of the inhabitants* thereof, and also in case the authorities of the city or town, should, themselves, desire it.  Appropriate proceedings were provided for such cases. These latter sections applied to all municipalities.

Then came the constitution of 1874, which also required general laws for the incorporation of cities and towns. Under that, a new general act, intended to embrace the whole subject-matter, was passed on the ninth of March, 1875.  By section five, of this act, " all corporations, *which*

*existed* when the present constitution took effect, for the purpose of municipal government, and *described, or denominated* in any law then in force, are hereby organized into cities of the first and second-class, as the case may be, and incorporated towns, with the territorial limits respectively prescribed, or belonging to them."

After proceeding to make full provisions upon the whole subject-matter, the act, by reference to sections of *Gantt's Digest,* which had been recently compiled, repealed many pre-existing laws, amongst them the act of 1873, with a proviso that all territorial additions theretofore made, to any city or municipal corporations, under the second and third sections of said act, should " remain as they now are."

The argument is, that this proviso, expressly saving territorial additions, made under the other sections, by implication, cut off those like this in question, which had been made under the first. There is in the act of 1875, no express provision that any additions to corporations theretofore made, should be thrown off. They are left to the ordinary operations of the law, unless cast off by implication, as contended.

What the legislature meant by selecting certain classes of additions to be expressly saved, passing the others in silence, is not apparent, nor is it necessary to determine it. Standing alone, the language of the act does not affect any of the additions outside of the proviso. It left them to the operation of the law, and the decisions of the courts; and, if properly added whilst the law of 1873 was in force, they would retain their status as parts of the respective corporations, after its repeal. But it does not stand alone. The provisions of section 5 of the act of 1875 are very explicit. There were then no municipal corporations in existence except such as were acting under general laws, which " *denominated* " no particular one, nor " *prescribed* " its

City of Little Rock v. Parish, County Clerk.

limits. But all of them properly organized, were "described" by general laws; and had under the provisions of general laws, territorial limits, "belonging" to them. The act was framed in superabundant caution, lest there might be in existence some of the old corporations formed under special acts with limits therein provided. The whole intent of the act was obviously to avoid changing the limits of any corporation, being then properly fixed, and thus avoid the confusion which might arise upon the repeal of the old general laws, and the enactment of a more compact and better considered new one. This leads to the conclusion that DuVal's addition was within the corporate limits of the city of Little Rock when the act of 1877 was passed. Appellant contends that the last named act was unconstitutional.

Does it appear to us, clearly and palpably, that it is in violation of the organic law of the state? It is a question of great delicacy. Each department of the government is required, for itself, in the first instance to look to the constitution for its powers and duties. The members of the legislative department, like ourselves, are sworn to support it, and we must presume they have acted in good faith under the obligation of their oaths. They constitute a co-ordinate branch of the government of equal dignity with this. We can only interfere with, and annul their action, when they disregard the restrictions of the constitution. Comity, and the harmony of the departments, require that we should first be well satisfied they have done so. On the other hand, when so satisfied we should not hesitate to perform the duty, which devolves upon us as the ultimate tribunal for the settlement of constitutional questions.

Article V, section 25, of our present constitution (1874), provides, as follows:

"In all cases where a general law can be made applica-

ble, no special law shall be enacted; nor shall the operation of any general law be suspended by the legislature for the benefit of any particular individual, corporation or association; nor where the courts have the jurisdiction to grant the powers, or the privileges, or the relief asked for."

We have before alluded to the provision requiring all cities and towns to be organized under general laws. It is further specially provided (*Article XII, section 2,*) that, " the general assembly shall pass no special act conferring corporate powers," with some exceptions as to public charities, etc., not touching this question.

It is conceded, under former decisions of this court, that the legislature must determine for itself, whether a general law can be made applicable in any particular case; and that therefore the act we now come to construe, although special in its nature, is not *on that account* obnoxious to the first clause of section 25, of article V.

The act purports to be one to define the boundary line of the city of Little Rock, and states. in its preamble, that said lines " are indefinite and uncertain, thereby causing much annoyance to the citizen, and expensive litigation."

Counsel, in support of the act, contend that boundaries are essential to the existence of any corporation, and that this necessity authorizes curative action on the part of the legislature, if they become lost or confused; and the legislative finding of the fact of such confusion is conclusive. It is true that where the constitution has given legislative power upon certain contingencies which depend on evidence, or has intrusted the legislative body with a discretion in determining the fit mode of its action, its finding of such facts, or the exercise of its judgment, will be conclusive. But the necessity of legislation to define boundaries is not apparent. Corporations *have* boundaries, or

City of Little Rock v. Parish, County Clerk.

they have no existence. To determine whether they have or not, or what they are, is within the power of the courts. Such a preamble as this will not aid unauthorized action. We must look to the act itself, and the facts admitted, to see if the legislature has attempted to do a forbidden thing.

*1. Corporations: Power to determine their boundaries.*

It provides in a single section, that the city shall embrace within its limits certain tracts of land, designating them by the United States surveys, referring to them also as designated upon a certain map of said city, made by the city engineer, and then setting them forth by metes and bounds. This is the whole of it; and the demurrer admits that the boundaries so declared exclude "DuVal's addition."

The general law, then in force, provided the means by which territory could be added to, or cut off from any municipal corporations. Appellant contends that this act suspended the operation of the general act with regard to the city of Little Rock. If so, it was unconstitutional, for it was for the benefit either of the city, or of the excised owner, and was also passed in regard to a matter wherein the courts had jurisdiction to give relief.

The legislature probably did not intend to exercise a mere judicial power, by declaring an actual existing boundary, as the result of what had been theretofore done. That would be wholly without its province and would bind no person nor tribunal. Nor do we suppose it meant to preclude the city from afterwards cutting off any of its territory so declared to be embraced, by proceedings under the general law. No one could doubt that to be a plain, gross and palpable suspension of the general law.

We presume the intention to have been, first to correct and clear up a disordered boundary, by leaving out the portions concerning which doubt existed, or litigation was

imminent, and to make it, *thenceforth,* the governing boundary *until* it should be changed by such proceedings as the general law provided.

Viewed in this, the only light which would make it plausible, its effect was to defeat *pro hac vice,* the legitmate action of the city and of DuVal in making the addition in the first instance, and to spetially take that particular city out of the provision of section 5 of the general incorporating act which had assured to all corporations, existing when the general act was passed, the continuation of their respective territorial limits. Did this " *suspend the operation*" of the general law:

The words have no technical meaning. In its ordinary use, to suspend is "to cause to cease for a time; to hinder from proceeding ; to interrupt ; to delay ; to stay." Operation means " exertion of power;" "method, of working;" " process of operating;" "mode of action." *See Webster in verba.*

The act in question paralyzes, with regard to the city, the force of section 5, with regard to · all the territory *belonging* to it when the general act was passed, and which lies outside the line prescribed by the act of 1877. We can not resist the conclusion that the latter act suspends the operation of the former.

It is said, however, that this is a curative act, and may be sustained upon the principles which govern them, and our attention is called especially to the case of *The State v. Squires,* reported in *26 Iowa, 340.* In that state there was a constitutional inhibition against the passage of any special act to create a corporation, whether of a city, town, or of any other kind, with mandatory directions to the general assembly, to provide for them by general laws. A defective and abortive effort had been made, under the general law, to organize a certain school district. Afterward,

by special act of the legislature, the organization was legalized. The old district embracing the territory, having to lose the school fund, caused a *quo warranto* to be issued against the new officers. The court sustained this as a curative act, whilst conceding that the legislature could not, by special act, have organized the same district. Without expressing any opinion as to the soundness of the reasoning upon which the court, in that case, bases its opinion, it suffices to say, here, that the case has no just application to the one in judgment.

This act, now being considered, does not purport to cure anything that has been defectively done, in order to hold parties to their original intention, which is of the very essence of all curative acts, and their only justification.

It arbitrarily assumes that the boundaries of Little Rock are undefined, without stating how they became so, and proceeds by direct legislation to cure an inconvenience. What attempted action of any body, or set of men, is it, that is to be cured, and held good as intended? Who has indicated, in any way, that they want such a line as the legislature has marked and attempted to make, and failed, and asked curative aid, to bind the world to observe what was actually meant? It is simply original legislation, based upon the judgment of the legislature, and effecting a result which is in antagonism to anything which it appears that any one wished, and had attempted legitimately to do, and failed.

Moreover, Art. XII, sec. 2, of the constitution of 1874, contains an unqualified prohibition of any special act, conferring corporate powers, except for peculiar classes of corporations, not here involved. By this, unlike the former prohibition of special acts, it is not left to the legislature to determine whether or not a general act could be made applicable. The injunction to pass general laws for the

organization of cities, etc., and the prohibition of special acts, conferring corporate powers, are both positive, and unqualified in any way to affect this question. Under constitutions, with similar provisions in other states, the courts have not confined the meaning of the word "powers" to the different degrees of legislative, judicial or police powers, regardless of the area over which they are to be exercised, but have held the legislature incompetent to extend the area also, by additions to the cities. In Ohio, from which state these provisions seem to have been adopted by several other states, the leading case upon this subject is *The State ex rel. v. The City of Cincinnati*, *20 Ohio St., p. 18.*

The reasoning of the court is unanswerable, and the case has been followed in Kansas.

Assenting to it very heartily, it would be absurd to hold that the legislature had power to reduce but not increase, the area of a city. It is literally true that such action would *confer* no powers whatever; but constitutions, like statutes and private writings, are to be construed according to their plain intent, derived from the language and context. Of what avail would it be to prohibit the legislature from conferring special powers on favored municipalities, if it might first confer them by general act on all in the state, and then by special acts, trim down to a general level, and shackle all not meant to be favored? Besides, a distinction in this regard, between a power to increase and a power to diminish the area of cities, can be rested on no plausible foundation of reason.

We can not entertain a reasonable doubt that the constitution intended that all municipalities of the same class should be put upon the same footing, with the same modes of creation, increase and contraction of territory, and powers of government, and to prohibit all legislative

interference, producing the diversities and inconveniences which the system of special charters had shown to be detri-mental.

It may be well to add that these provisions of the consti-tution can not apply to counties or townships, which are only quasi-corporations and agencies of government. Nor does the constitution take from the legislature that unlim-ited control of all municipal corporations, which has been always, by this court, ascribed to it. It only compels it to act by general laws, in the exercise of that control.

We are well satisfied the general assembly, in passing the law in question, acted under a mistake of their powers, and that the law is unconstitutional, not only as a suspen-sion of a general law, under section 25, of Art. V., of the constitution, but, also, as against the true spirit and intent of the clause in Art. XII, section 2, prohibiting special acts conferring powers.

There is no greater hardship in requiring the courts to declare the true boundaries of a city than in requiring them to settle any other complicated controversy, and it must be conceded that by their organization, experience in legal and equitable controversies, and in weighing evi-dence, and by their modes of proceeding, they are better fitted for it than legislative bodies, even if the latter be composed of the best and most learned members of the community. Issues for the determination of the question may, in many ways, arise in law, and the flexible proceed-ings of courts of chancery, are well fitted to embrace all parties, or even classes, interested in the subject-matter, and close all litigation in one suit.

The boundaries of the city of Little Rock remain as they were before the passage of the act of 1877, whatever they may be. Perhaps the courts, with better means of investiga-tion, may not find them hopelessly indefinite and uncertain.

12—36

The petition, on its face, shows that the clerk should extend the city taxes over the property in question. It should be denied if the clerk desires to show a different state of facts, or met by matter in avoidance, if there be any new thing to defeat the right. The demurrer should have been overruled, and the action of the court was erroneous.

Reverse, and remand for further proceedings, etc.