# State *ex rel.* Scholl *v.* Duncan.

## *Quo Warranto.*

(Decided June 3, 1909.   Rehearing denied June 30, 1909.
50 South. 265.)

1. *Statutes; Repeal.*—General Acts 1907, p. 893, amending General Acts 1903, p. 499, do not repeal General Acts 1907, p. 864, and therefore, an ordinance providing for a city bacteriologist is not invalid as appointing a municipal officer to exercise the functions pertaining to a state officer.

2. *Same; Implied Repeal.*—The fact that two statutes relating to the public health and creating officers in connection therewith were passed by the same legislature within a few days of each other, creates a strong presumption that no conflict is supposed to exist.

3. *Words and Phrases; Bacteriology.*—Bacteriology is the science of investigation of bacteria and other microbes, especially their life history and agency in the production of disease.

APPEAL from Jefferson Circuit Court.

Heard before Hon. A. A. COLEMAN.

Quo warranto by the state on the relation of Edward H. Scholl and others against Ellis N. Duncan, to ascertain his rights to hold the office and exercise the powers of city bacteriologist of Birmingham, Ala. From a decree for respondent relators appeal. Affirmed.

ROBERT E. SMITH, and TYSON, WILSON & MARTIN, for appellant. The admission admitting the allegations of the petition imposes upon the defendant the burden of showing by his answer that he is lawfully exercising the functions of the office he holds.—*Montgomery v. The State,* 100 Ala. 372. The rule is better stated in 17 Ency P. & P. 467 and note on P. 468; See, also, *State ex rel. Little v. Foster,* 30 South. 477. Where power is given to administer the public health the health officer or officers in authority have the inherent right to ap-

point all officers and employes subordinate thereto.—
*Blue v. Beech,* 80 Am. St. Rep. 234. The word, supervisor has received judicial meaning.—35 N. W. 118; 71 N. W. 601. An ordinance contrary to the general state law is void.—85 Ala. 144. Chapter 22, Political Code 1907, treats of health and quarantine regulations, and is contrary to the spirit as well as the letter of the act authorizing the city to create such an office, and appoint an officer thereunder.—*Riggs v. Palmer,* 5 L. R. A. 340.

R. H. THATCH, for appellee. The information in this proceedings does not fall within the letter or spirit of the grounds set out as a basis for quo warranto in section 5453, Code 1907. Counsel refers to the opinion of the trial judge for the proper interpretation of the acts in question.

SAYRE, J.—This is a proceeding in the nature of a quo warranto, challenging the right of respondent to exercise the functions of city bacteriologist, created by an ordinance of the city of Birmingham approved January 5, 1908. It is not denied that respondent was elected to the office in question, nor is there averment that he is in any respect disqualified to hold the same. The controversy between the parties relates to the right of the municipality to create an office with the powers and functions conferred by the ordinance upon the respondent; the argument for the relators being that the ordinance is in contravention of the laws of the state, which is to say that respondent, acting under the color of the ordinance, is wrongfully exercising the functions which, under the general law of the state, pertain to the health officer of the city of Birmingham. In the act approved October 9, 1903 (Gen. Acts 1903, p. 499), an elaborate system was amended, reconstructed, and provided for

the enforcement of the laws relating to the public health. A general control was committed to the State Board of Health, and many powers and duties in their respective counties conferred upon county boards, which are placed under the general supervision and control of the State Board. By subdivision "f" of section 4 it was made the duty of the county board in each county to elect a health officer for any incorporated city or town in the county whose charter did not otherwise provide. In the re-enactment of this subdivision in the amendatory act of August 15, 1907 (Gen. Acts 1907, p. 893), the exception of municipalities having charters providing otherwise was omitted. The duties of municipal health officers, elected by the county boards, enumerated in section 710 of the Code of 1907, may, so far as needful in this connection, be epitomized as follows: They are to keep registers of births, deaths, and infectious diseases; to exercise, under the direction and control of the committee of public health, acting for the county board of health, and in accordance with the health laws of the state and the municipality,. general supervision over the sanitary interests of the municipality; to investigate cases of disease suspected to be contagious, infectious, or pestilential in character, and report the facts in writing to the mayor and council of the municipality, to the committee of public health of the county board of health, and to the state health officer; to investigate municipal prisons and charitable institutions as respects condition and conduct; and to perform other duties of like general character. The various legislative enactments of recent years, codified into chapter 22 of the Code, evince a purpose to bring all matters concerning the health and quarantine of the state under the jurisdiction of the State Board of Health and its subordinate county boards.

With undoubted propriety, relators concede that section 142 of the act of August 13, 1907 (Gen. Acts 1907, p. 864), confers upon municipalities the power to adopt ordinances to prevent the introduction of contagious, infectious, or pestilential diseases, to establish and regulate a sufficient quarantine not inconsistent with the laws of the state, to adopt ordinances and regulations to insure good sanitary conditions in public and private places, and to prescribe the duties and fix the salaries and compensation for such health officials as they may deem necessary. This section is an amplification in one direction of the general power conferred by section 80, by which municipal corporations are given power to adopt ordinances, not inconsistent with the laws of the state, to carry into effect or discharge the powers and duties conferred, and to provide for the safety, health, prosperity, morals, order, comfort, and convenience of the inhabitants of the municipality. Bacteriology is the science which investigates bacteria and other microbes, especially their life history and agency in the production of disease. Ordinances providing for bacteriological investigation and research have a just and reasonable, not to say necessary relation to the health and safety of communities. It will not be denied therefore, that the general and special powers conferred by the two sections of the act last referred to are amply broad to justify the ordinance of the city of Birmingham creating the office of city bacteriologist. But the act amendatory of the health and quarantine laws of the state postdates the act of August 13, 1907, known as the "Municipal Code Law," by two days. They have both been printed in the Code, but were not enacted as a part of the Code of 1907. The question, then, is whether the later statute, dealing with the subject of health and quarantine, must be held to repeal the power to appoint

[State ex rel. Scholl v. Duncan.]

a bacteriologist, with such duties as are enumerated in the ordinance, which power is fairly implied in the municipal charter act.

The health and quarantine law and the municipal code law cover in part the same field so far as cities and towns are concerned. The fact that they were passed by the same Legislature, and so nearly together, creates a strong presumption that no conflict was supposed to exist. We find no conflict in the letter of the two statutes. Nor do we think the duties imposed by the ordinance upon the bacteriologist are of such nature as to give rise to conflict between that official and the health officer provided for in the health and quarantine law. The former is nothing more than an agent for gathering information, as the ordinance shows. Such information will be valuable to the officers and people of the municipality in the conduct of its government within the limits of its unquestioned powers. It can in no wise curtail the powers of the health officer, nor interfere with their complete beneficial exercise, that one or a dozen bacteriologists appointed or elected by the city may cover the same ground for the purpose of getting information. We discover in the health and quarantine laws of the state no expressed or implied purpose to deny to a municipal corporation the authority to procure for the use of its officers and people, in the administration of their affairs, expert knowledge of things which may affect the safety, health, and comfort of the community.

In view of some expressions in the opinion of the learned judge of the trial court, made a part of the record here, we remark that this proceeding can have no effect upon the official status or powers of the municipal health officer of the city of Birmingham, who has been elected by the county board. This, indeed, is necessarily implied in what we have said above.

[City of Bessemer v. Eidge.]

There was no error in the ruling of the court below, and its judgment will be affirmed.

DOWDELL, C. J., and ANDERSON and McCLELLAN, JJ., concur.

