(112 So. 243)

## MARENGO COUNTY v. WILCOX COUNTY.
### (2 Div. 906.)

Supreme Court of Alabama. March 31, 1927.

**1. Constitutional law  ⬤═⇒70(1)—Legislature alone can establish or change county boundaries, but determining their location is judicial question.**

Laches or acquiescence cannot change location of county boundaries fixed by law, since Legislature alone has authority to establish or change them, but determination where lawful boundary line is is judicial question.

**2. Counties  ⬤═⇒7—County cannot enter on land of another county as proprietor unless title or right of possession has been acquired.**

County cannot enter on land of another county as proprietor, except where title or right of possession has been acquired for lawful purposes, since possession is in the citizen.

**3. Counties  ⬤═⇒8—County may properly invoke remedies of equity to determine location of disputed boundary between counties.**

Where location of boundaries between counties is in dispute, county may properly invoke remedies of court of equity to determine it, since question of boundary may become collaterally involved in many actions between citizens, or county and citizens.

**4. Counties  ⬤═⇒7—Boundary between Marengo and Wilcox counties held to run as described in act defining boundaries of Marengo county, in view of 50 years' acquiescence (Act Dec. 13, 1819, § 2 [Toulmin's Dig. tit. 10, c. 23]; Acts 1830–31, p. 30, § 3).**

Boundary between Marengo and Wilcox counties *held* to run from Choctaw corner east to middle of range line between ranges 4 and 5 in township 12, in view of Act of Dec. 13, 1819, § 2 (Toulmin's Dig. tit. 10, c. 23), defining boundaries of Wilcox county, notwithstanding contrary description in section 3, Acts of 1830–31, p. 30, defining boundaries of Marengo county, where such line, though not following section lines, was acquiesced in for 50 years.

**5. Appeal and error  ⬤═⇒909(1)—In county boundary dispute, section from corner of which line ran will be presumed to be standard instead of fraction on appeal from decree overruling demurrer.**

In absence of contrary allegation, in action between Marengo and Wilcox counties to determine boundary, court will, on appeal from decree overruling demurrer, presume that section 19, from corner of which disputed boundary line ran, was standard and not fractional section.

**6. Boundaries  ⬤═⇒3(6)—Designated, well-defined terminal points dominate course and distance.**

In matters of description, designated, well-defined terminal points dominate course and distance.

**7. Counties  ⬤═⇒8—County boundaries acquiesced in for 50 years will not be disturbed unless clearly wrong.**

Unless clearly wrong, lines recognized and acquiesced in for 50 years as boundary between counties will not be disturbed.

**8. Statutes  ⬤═⇒207—Rule that latter of conflicting statutory sections will control is subject to rule that statute should be construed as whole.**

Rule that when sections of statute are in conflict, last in order of arrangement will control, is subject to dominant rule that statute should be construed as whole to find legislative intent.

**9. Statutes  ⬤═⇒225—Separate legislative acts relating to same subject and passed at same session will be construed in pari materia.**

Separate acts of Legislature, relating to same subject, passed at same session, and pending for consideration at same time, will be construed in pari materia without undue regard to dates of actual passage.

**10. Statutes  ⬤═⇒207—Conflicting intentions in same legislative act are not to be supposed, in absence of unambiguous language.**

Conflicting intentions in one and the same act of Legislature are not to be supposed and never so regarded, unless forced on courts by unambiguous language.

**11. Statutes  ⬤═⇒207—Less certain must yield to more certain terms of statute to harmonize seeming conflicts in statutes.**

Rule of construction of statutes is to harmonize seeming conflicts, and to do so less certain must yield to more certain terms.

Appeal from Circuit Court, Wilcox County; H. F. Reese, Judge.

Bill in equity by the County of Wilcox against the County of Marengo to establish the boundary line between said counties. From a decree overruling demurrer to the bill, defendant appeals. Affirmed.

Williams Cunninghame, of Linden, and McKinley & McDaniel, of Demopolis, for appellant.

Section 3 of the Act of 1819, being the later expression of the legislative will, must prevail over section 2. Hand v. Stapleton, 135 Ala. 162, 33 So. 689; Ex parte Thomas, 113 Ala. 1, 21 So. 369; Buttfield v. Stranahan, 192 U. S. 470, 24 S. Ct. 349, 48 L. Ed. 525; In re Richards (C. C. A.) 96 F. 939; Maxwell on Statutes (2d Ed.) 214; 36 Cyc. 1130; Williams v. State, 197 Ala. 40, 72 So. 330, Ann. Cas. 1918D, 869; Davis v. State, 16 Ala. App. 397, 78 So. 313. The court of equity has no jurisdiction to establish a county boundary, the Legislature alone is so empowered; and the bill is without equity. Const. 1918, art. 6, § 17; Const. 1861, art. 6, § 16; Const. 1865, art. 2, § 12; Const. 1868, art. 2, § 2; Const. 1875, art. 2, § 2; Const. 1901, art. 2, § 39; Humboldt Co. v. Lander County, 22

---

⬤═⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Nev. 248, 38 P. 578, 26 L. R. A. 749, 58 Am. St. Rep. 750. An act fixing the boundaries of a county is not to be construed as a grant. Russell v. Robinson, 153 Ala. 327, 44 So. 1040; Tallassee Falls Co. v. State, 13 Ala. App. 623, 68 So. 805; Id., 194 Ala. 554, 69 So. 589. There can be no such thing as adverse possession between political subdivisions of the state. Mobile Co. v. Williams, 180 Ala. 639, 61 So. 963; Tallassee Falls Co. v. State, 13 Ala. App. 623, 68 So. 805.

Bonner & Miller, of Camden, for appellee.

The court of equity has unlimited jurisdiction to establish and define disputed boundaries. Code 1923, § 6465. Since in the act the point of beginning and point of ending are fixed, these points control over the word "east" as used in the act. Ullman Bros. v. State, 16 Ala. App. 526, 79 So. 625. The doctrine of long acquiescence has application to this case. Russell v. Robinson, 153 Ala. 327, 44 So. 1040; Ullman Bros. v. State, supra.

BOULDIN, J. The suit is in equity to settle and establish the boundary line in dispute between the counties of Marengo and Wilcox. The appeal is from a decree overruling demurrer to the bill. The demurrer, among other grounds, challenged the jurisdiction of the court of equity to settle or establish the boundary line between counties.

[1] The Legislature alone has authority to establish or change the boundary line between counties. Laches or acquiescence cannot change the location of boundaries fixed by law. But the bill is not directed to that end. It shows a controversy between the counties as to the location of the boundary fixed by law. The inquiry is, Where is the lawful boundary line between the counties? This is a judicial question to be determined upon a construction of the defining statutes, with the aid of such other legal evidence as may be received in case of uncertainty. In the absence of a special tribunal or agency vested with authority to determine that question, it devolves upon the courts.

Appellee, in argument, refers the equity of the bill to the jurisdiction in equity to "establish and define uncertain or disputed boundary lines." Code, § 6465, subd. 5. In view of the history of this statute, it refers, primarily at least, to disputed boundaries between adjoining landowners. We prefer to refer the jurisdiction here to the general principles of equity, a want of adequate legal remedy, multiplication of suits, etc.

[2] A county, we assume, has no such possession or right of possession as to support ejectment to lands over which a sister county claims or is asserting jurisdiction. The possession is in the citizen. The county cannot enter upon it as proprietor except where title or right of possession has been acquired for lawful purposes.

215 ALA.—41

[3] The question of boundary may become collaterally involved in many actions at law between citizens, or the county and its citizens, such as venue of actions, right to vote, collection of taxes, etc. In such suits, the adjoining county, in its corporate capacity, is not a party, has no day in court, and is not bound. The protection of its citizens against loss and litigation, the protection of its officers in the rightful discharge of duty on the one hand and against the hazards of usurpation of authority on the other, require that the corporate body, authorized to sue and be sued, should cause to be adjudicated finally and put to record the true location of the boundary, and, if need be, cause it to be delimitated and marked upon the ground. To this end the remedies of a court of equity are properly invoked. Indiana v. Kentucky, 136 U. S. 479, 10 S. Ct. 1051, 34 L. Ed. 329; Little Rock v. Parish, 36 Ark. 166; Parish of Caddo v. Parish of De Sota, 114 La. 366, 38 So. 273; Sierra County v. Nevada County, 155 Cal. 1, 99 P. 371, 15 C. J. pp. 397, 398.

[4] The boundary line in controversy came into being by the Act of December 13, 1819. Toulmin's Dig. p. 90. Section 2 of the act, defining the boundaries of Wilcox county, describes the line thus:

"Beginning at the Choctaw corner; thence *east* to the *middle* of the range line, between ranges four and five in township 12." (Italics supplied.)

Section 3 of the same act, defining the boundaries of Marengo county, describes the line thus:

"Beginning at the Choctaw corner, thence running *east* to the range line dividing ranges four and five." (Italics supplied.)

The bill avers that the Choctaw corner, named as the initial point, is at the southwest corner of section 19, township 12, range 3, east. From this point east, following section lines across township 12, range 3 and township 12, range 4, approximately 12 miles, the terminal point at the east end on the range line would be at the southeast corner of section 24, or one mile south of the middle point of the east boundary of the township. Marengo county insists this is the true line. Wilcox county insists the boundary is a direct line from Choctaw corner (southwest corner of section 19, township 12, range 3) to the middle point of the east boundary of township 12, range 4, or northeast corner of section 24.

By a later Act, January 15, 1831, that part of Wilcox county lying west of the middle of range 4, including the Choctaw settlement, was detached and added to the county of Clarke. Acts of 1830–31, p. 30. So that the present boundary between Marengo and Wilcox extends only across the east half of township 12, range 4, 3 miles, and the territory in-

volved in the suit is in sections 22, 23, and 24, township 12, range 4.

In construing the somewhat variant descriptions of the line as found in sections 2 and 3 of the act, Marengo county contends that a line from Choctaw corner to the middle point of the township line mentioned would be an arbitrary line cutting into fractional subdivisions a tier of sections across two townships, but a line running due east will follow section lines and avoid fractions. In view of the convenience of landholders in matters involved by county boundaries, such as giving in taxes and recording conveyances, as well as in having a fixed line easily ascertainable by government surveys, there is force in this argument.

[5] This assumes that Choctaw corner, made the southwest corner of section 19, is at a point in line with section lines running east. But if Choctaw corner was located prior to the survey into government subdivisions, and section 19 was made a fractional section so as to conform its southwest corner to Choctaw corner, it would not follow that a line due east would follow section lines and avoid fractions. In the absence of averment in this regard, we will, on demurrer, presume section 19 was a standard section in further consideration of the case.

[6] Even so, we think the bill states a case in favor of Wilcox county for the following reasons: First. In matters of description, designated, well-defined terminal points dominate course and distance. The middle point of the east boundary of a township clearly implies a point on the range line, definitely marked on the ground, with a public record of official field notes perpetuating the evidence thereof, a point three sections distant from northeast and southeast corners of the township. This is the point that persons would naturally seek in locating the common corner of Wilcox and Marengo counties. Second. The further calls for boundaries of Wilcox county, section 2, follow township and range lines or median lines across townships throughout, except when following watercourses or lines already established. Third. It is averred that for 50 years Wilcox has exercised sovereignty over the disputed area, such as maintaining schools, building and maintaining roads and bridges; that it was considered a part of Wilcox county when the county was surveyed by government surveyors, and is so shown on the tract books of Wilcox and Marengo counties; that for 50 years it has been so treated and understood by both counties, and no authority asserted over it by Marengo county until the fall of 1925, when the tax assessor and collector of Marengo county began to assess and collect taxes thereon.

These averments have decided weight in case of doubt as to the true location of county boundaries. Such boundaries are the subject of continuing inquiry from the time of the first settlement in the disputed area. The citizen must find in which county he is to register and vote, where he must assess and pay his taxes, record his conveyances of lands, serve as a juror, who has supervision over the schools for his children and the like. The various county officers must decide these matters from year to year.

[7] Entire acquiescence for a period running back as far as memory goes implies like acquiesence from the first. In early years the men who passed the act, and their contemporaries interested in the location of boundaries, were living, and a contemporaneous construction of the act was being given. All these matters are strongly persuasive that the line so recognized is the line intended. To overturn such line at this late date would involve much inconvenience and expense, even the legality of many acts of the citizen and maybe the title to his property. Unless clearly wrong, lines so recognized, acted upon, and acquiesced in will not be disturbed. Russell v. Robinson & Co., 153 Ala. 327, 44 So. 1040; Ullman v. State, 16 Ala. App. 526, 79 So. 625; Indiana v. Kentucky, 136 U. S. 479, 10 S. Ct. 1051, 34 L. Ed. 329; Rabun County v. Habersham County, 79 Ga. 248, 5 S. E. 198.

[8-11] The rule announced in Hand v. Stapleton, 135 Ala. 156, 33 So. 689, that when sections of a statute are in conflict the last in order of arrangement will control, is subject to the dominant rule that the statute should be construed as a whole to find the legislative intent. Indeed, separate acts relating to the same subject, passed at the same session, pending for consideration at the same time, will be construed in pari materia, without undue regard to the dates of actual passage. Conflicting intentions in one and the same act are not to be supposed, and never so regarded, unless forced upon the courts by unambiguous language. The rule of construction is to harmonize seeming conflicts. To do so, the less certain must yield to its more certain terms. For this reason a description giving not only the course or direction of a line, but also giving its terminal point, must dominate one giving course or direction only, unless other terms of the statute, in connection with the subject-matter, makes clear a different intent.

Assuming that the Legislature in framing the act may have been misadvised as to the true location of Choctaw corner, and made the other terminals at the middle point of the township line under mistake, this would in no way change the construction. Contracts between parties wherein a mistake enters may be reformed. Not so as to acts of legislation. The only power to amend its acts, though induced by mistake of fact, lies in the legislative body.

Affirmed.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.