150 So.2d 735

**Joe W. REID et al.**

**v.**

**CITY OF BIRMINGHAM et al.**

**6 Div. 956.**

Supreme Court of Alabama.

March 1, 1963.

Hugh A. Locke, Crampton Harris and Jas. A. Simpson, Birmingham, for appellants.

John S. Foster and Graham, Bibb, Wingo & Foster, Birmingham, for appellees.

Speir & Smith, Birmingham, amici curiae.

COLEMAN, Justice.

This is an appeal by the plaintiffs in an action for declaratory judgment, rendered by the circuit court, relating to the validity and legality of an election to change the form of government of the City of Birmingham, and relating to the time at which the officers of the city to be elected under the changed form of city government take office.

The court declared that the election held November 6, 1962, was legal and valid. In that election, the majority of votes approved the adoption by the city of the Mayor-Council form of government provided by the "Mayor-Council Act of 1955." Act No. 452, approved September 9, 1955; Acts of Alabama 1955, Vol. II, page 1004. The court further declared that Act No. 71, approved June 18, 1959; Acts of Alabama 1959, Vol. I, page 477; "can in no way be effective to prevent any legally elected Mayor or Councilman from taking office under the provisions of" Act No. 434, approved September 9, 1955; Acts of Alabama 1955, Vol. II, page 980; and Act No. 452, supra.

The plaintiffs allege that they are citizens, taxpayers, and residents of the city. The defendants are the city, one of the three city commissioners as mayor and chief executive officer of the city, the probate judge of Jefferson County, and the comptroller of the city.

Pertinent parts of the petition for declaratory judgment recite as follows:

"4. Purporting to act pursuant to Section 1.03 of Article I of the Act (Act No. 452, supra) (Par. Added.), the defendant Honorable J. Paul Meeks

(Probate Judge) (Par. Added.) caused an election to be held on November 6th, 1962, and thereat submitted to the voters of the City of ·Birmingham, inter alia, the proposition:

" 'Shall the Mayor-Council form of government, as provided by the Mayor-Council Act of 1955, be adopted for the City of Birmingham? Such proposition was submitted exclusively on voting machines and was submitted to the voters jointly in connection with two other propositions, viz.:

" 'Shall the Commission form of government be retained in the City of Birmingham?'
and

" 'Shall the Council-Manager form of government, as provided by the Council-Manager Act of 1953 be adopted for the City of Birmingham?'

"Plaintiff is advised and believes and upon such information and belief avers that the Election Commission or other canvassing-board or official having charge of such election held on November 6, 1962 has, subsequent to said election, transmitted to the Governor, to the Secretary of State, to the defendant, the Judge of Probate, and to the defendant, Mayor of the City, a certificate stating that at such election a majority of the voters voted for and approved the proposition:

" 'Shall the Mayor-Council form of government as provided by the Mayor-Council Act of 1955 be adopted by the City of Birmingham?'

"5. Plaintiff is further informed and believes and upon such information and belief avers that the defendant, Honorable J. Paul Meeks, as Judge of Probate of said County, has stated that he will, as provided by' Section 1.07 of Article I of the Act, immediately call an election for the selection of nine Councilmen and a Mayor by the qualified voters of the City, and take such other steps as are incumbent upon him by the Act to institute a government of the City under the said Act immediately after the election of said Councilmen and Mayor and prior to October 1st of the general municipal election year next after November 6, 1962, and that others of the defendants will cause such Councilmen and Mayor to be paid salaries at the rates prescribed in the Act for the period between their installation under the Act and October 1st, of the general municipal election year next after November 6, 1962.

\* \* \* \* \* \*

"7. Plaintiff respectfully shows the Court that:

\* \* \* \* \* \*

"VII. The provisions of said 'Mayor-Council Act of 1955', directing that immediately after the election provided for in Section 1.03 of said Act, the defendant Probate Judge should call an election to be held under and to be governed by the said Act, not less than 90 days nor more than 120 days after the date of such call, at the expense of the City, to elect nine Councilmen and a Mayor (Section 1.07) and further directing that said Councilmen and Mayor take office on the second Monday following the date of the election of the said nine Councilmen and that the City shall, at that time and thereby be and become organized under the Mayor-Council form of government, and shall thereafter be governed by the provisions of said Act, are void, inoperative and of no effect because, contrary to and in violation of Act No. 71 of the Regular Session of the Legislature of 1959, approved June 18, 1959, which provides, inter alia:

" 'No change from the commission form of government to the mayor-council form of municipal government hereafter directed by vote of the electors of any municipality in this state shall become effective until October

first of the general municipal election year next following the election at which such change is voted.' "

The amended prayer of the petition recites as follows:

"WHEREFORE, Plaintiffs pray that the Court will take jurisdiction of this matter, order appropriate process to issue to the defendants, and a copy served upon the Attorney General of Alabama, hear and consider the issues tendered, and that, upon consideration of the matter, the Court will order, adjudge and decree the rights and duties of the parties, both in their personal and official capacities, and declare the law with respect to the matters in paragraphs 4 and 7 above tendered and, further, that if the Court does not find that Act #452 of the Regular Session of the Legislature of Alabama of 1955 is unconstitutional, that it then find and declare that the said election held on November 6, 1962, was illegal and void because in violation of the express provisions of said Act and in violation of other applicable provisions of law, and with respect to other kindred and related matters with which the Court shall deem it appropriate to deal in order to do complete justice in the premises and to afford relief from uncertainty, insecurity and confusion, and that the Court will grant the plaintiffs such other, further and additional relief as plaintiffs may in the premises be entitled to have."

Pertinent provisions of legislative acts here involved recite as follows:

Act No. 518, approved September 3, 1953, Acts of Alabama 1953, Vol. 1, page 652, recites:

"1.01. Cities to which Act applies. —Any City in the State of Alabama, which has a population of more than two hundred thousand, according to the last federal census, or which may hereafter have such population according to any federal or municipal census that may be taken hereafter, may adopt the council-manager form of government by proceeding in the manner hereinafter in this Act provided.

"1.02. Petition for election.—The filing of a petition signed by ten per cent (10%) or more of the qualified electors of such city, asking that the proposition of the adoption of the council-manager form of government for such city be submitted to the qualified voters thereof, with the judge of probate of the county in which such city is located, shall mandatorily require an election to be held as herein provided.
* * *

* * * * * *

"1.05. Proposition submitted; form of ballot.—At such election the proposition to be submitted shall be printed in plain prominent type on ballots separate and distinct from ballots used for any other office or question, and shall read as follows: 'Shall the council-manager form of government, as provided by the Council Manager Act of 1953, be adopted for the City of . . . . . . . . . ?

" 'Yes . . . . . . . . . .

" 'No . . . . . . . . . .'

The voter shall mark his ballot with a cross mark before or after the word which expresses his choice. No other proposition shall be submitted to the voters of such city upon this ballot.
* * *

* * * * * *

"10.03. Short title.—This Act shall be known and may be cited as the 'Council-manager act of 1953.' "

Act No. 434, approved September 9, 1955, at 10:51 a. m., Acts of Alabama 1955, Vol. II, page 980, recites:

"Section 1. In any election held under the provisions of any act heretofore or hereafter adopted for the purpose of authorizing a change in the form of government of any city with a population of 200,000 inhabitants or

more according to the last or any succeeding federal census, the electorate of such city shall be entitled to choose at such election between the Commission form of government, the Mayor Council form of government and the Council Manager form of government.

"Section 2. In any such election the provisions of any law or act to the contrary notwithstanding, the proposition to be submitted to the voters shall be printed in plain, prominent type on ballots separate and distinct from ballots for any office or question, and shall read as follows:

" 'Shall the Commission form of goverment be adopted (or retained) for the City of .......... ?

" 'Yes ..........'

" 'Shall the Mayor Council form of government, as provided by the Mayor Council Act of 1955, be adopted (or retained) for the City of .......... ?

" 'Yes ..........'

" 'Shall the Council Manager form of government, as provided by the Council Manager Act of 1953, be adopted (or retained) for the City of .......... ?

" 'Yes ..........'

"The voter shall mark his ballot with a cross mark before or after the word which expresses his choice. The voter shall express his choice as to one form of government only and no ballot shall be legal which is marked for more than one choice. No other proposition shall be submitted to the voters of such city upon this ballot. * * *"

Act No. 452, approved September 9, 1955, at 11:25 a. m., Acts of Alabama 1955, Vol. II, page 1004, recites:

"1.01. Cities to which Act applies. —Any City in the State of Alabama, which has a population of more than two hundred thousand, according to the last federal census, or which may hereafter have such population according to

any federal or municipal census that may be taken hereafter, may adopt the Mayor-Council form of government by proceeding in the manner hereinafter in this Act provided.

"1.02. Petition for election.—The filing of a petition signed by ten per cent (10%) or more of the qualified electors of such city, asking that the proposition of the adoption of the Mayor-Council form of government for such city be submitted to the qualified voters thereof, with the judge of probate of the county in which such city is located, shall mandatorily require an election to be held as herein provided. * * *

* * * * * *

"1.05. Proposition submitted; form of ballot.—At such election the proposition to be submitted shall be printed in plain prominent type on ballots separate and distinct from ballots used for any other office or question, and shall read as follows: 'Shall the Mayor-Council form of government, as provided by the Mayor-Council Act of 1955, be adopted for the City of .......... ?

" 'Yes ..........

" 'No ..........'

The voter shall mark his ballot with a cross mark before or after the word which expresses his choice. No other proposition shall be submitted to the voters of such city upon this ballot. * * *

* * * * * *

"1.07. * * * The terms of office of such candidates so elected shall commence immediately upon their election and qualification. * * *

* * * * * *

"10.03. Short title.—This Act shall be known and may be cited as the 'Mayor-Council Act of 1955.' "

Act No. 71, approved June 18, 1959, Acts of Alabama 1959, Vol. 1, page 477, recites:

"  *  *  * No change from the commission form of municipal government to the mayor-council form of municipal government hereafter directed by vote of the electors of any municipality in this state shall become effective until October first of the general municipal election year next following the election at which such change is voted. The term of any commissioner which might expire before such date is hereby extended until such date when the form of government changes."

The petition alleges that the "Mayor-Council Act of 1955," or parts thereof, is violative of certain constitutional provisions. The court declared that Act No. 434 and Act No. 452 are constitutional. Appellants do not assign these declarations as error, and do not argue the constitutionality of the acts, although there is assertion in brief that they are "contrary to the spirit of the Constitution of Alabama," citing Section 281. No constitutional question is presented.

Appellants insist that Act No. 434 and Act No. 452 are irreconcilable, and that, because Act No. 452 is the latest expression of the legislative will, Act No. 452 must prevail. As we understand it, the argument is that Act No. 452 nullified Act No. 434, and, therefore, the election of November 6, 1962, is void, or invalid, or illegal, because the ballot prescribed by the allegedly nullified Act No. 434 was used instead of the ballot provided for by Act No. 452. Appellants assert in briefs:

"We submit that to say there is 'some' conflict between these acts is a striking understatement. Here it is:

"Act 434, Section 1, provides;

" '*  *  * The electorate of such city shall be entitled to choose at such election between the *Commission* form of government, the *Mayor-Council* form of government and the *Council-Manager* form of government.' (Emphasis ours)

"Act 452, Section 1.05, on the contrary, provides:

" 'At such election the proposition to be submitted shall be printed in plain prominent type on ballot *separate and distinct* from ballot used for any other office or question, and shall read as follows:

" ' "Shall the Mayor-Council form of government, as provided by the Mayor-Council Act of 1955, be adopted for the City of......?

" ' "Yes..........

" ' "No.........."

The voter shall mark his ballot with an x mark before or after the word which expresses his choice. *No other proposition* shall be submitted to the voters of such city upon this ballot.' (Emphasis ours)

"We submit that this conflict is absolute; that confronted with it the duty of the Court was not to rewrite the law or to speculate about what the 'intention' of the Legislature may have been, but to decide which statute prevailed, or that the whole was void for uncertainty and because of irreconcilable conflict. *  *  *"

"The trial judge did not try to reconcile the irreconcilable nor did he attempt to make palatable the unpalatable gift of control to a disaffected minority."

We have studiously accorded the utmost deference to appellants' insistence that the two acts are irreconcilable. As we now undertake to show, however, we are of opinion that they are reconcilable.

This court has said:

"We are not unmindful of the fact that repeal by implication is not favored in the law. It is only when two laws are so repugnant to or in conflict with each other that it must be presumed that the Legislature intended

that the latter should repeal the former. If there is a reasonable field of operation, by a just construction, for both, they will both be given effect. This is said to be preferable to repeal by implication. City of Birmingham v. Southern Express Co., 164 Ala. 529, 51 So. 159; Riggs v. Brewer, 64 Ala. 282; Herr v. Seymour, 76 Ala. 270; Wyman v. Campbell, 6 Port. 219, 31 Am.Dec. 677; State ex rel. Grace v. Smiley, Clerk, 219 Ala. 119, 121 So. 398; State ex rel. Tubbs et al. v. White, 160 Ala. 168, 49 So. 78.

"We are also not unmindful of the fact that bills pending at the same time, and enacted into laws at the same session of the Legislature, are to be construed in pari materia. They are presumed not to conflict, and a field of operation will be given each, if consistent with clear intent. State ex rel. Sellers v. Murphy, 207 Ala. 290, 92 So. 661; State ex rel. Scholl v. Duncan, 162 Ala. 196, 50 So. 265." Davis v. Browder, 231 Ala. 332, 335, 165 So. 89, 91.

"The rule announced in Hand v. Stapleton, 135 Ala. 156, 33 So. 689, that when sections of a statute are in conflict the last in order of arrangement will control, is subject to the dominant rule that the statute should be construed as a whole to find the legislative intent. Indeed, separate acts relating to the same subject, passed at the same session, pending for consideration at the same time, will be construed in pari materia, without undue regard to the dates of actual passage. Conflicting intentions in one and the same act are not to be supposed, and never so regarded, unless forced upon the courts by unambiguous language. The rule of construction is to harmonize seeming conflicts. To do so, the less certain must yield to its more certain terms. For this reason a description giving not only the course or direction of a line, but also giving its terminal point, must dominate one giving course or direction

only, unless other terms of the statute, in connection with the subject-matter, makes clear a different intent." Marengo County v. Wilcox County, 215 Ala. 640, 642, 112 So. 243, 245.

■■ We understand the rule to be that, if under a reasonable construction both acts can operate, both will be given effect. We think reasonable construction gives effect to Acts 518, 434, and 452, supra, and each of them; and that the legislature in enacting No. 452 did not intend to repeal Act No. 434.

Act No. 518 provides, for cities of over 200,000 population, a method of adopting the council-manager form of government. Section 1.02 of the act provides that the filing of the specified petition, "asking that the proposition of the adoption of the council-manager form of government * * * be submitted to the qualified voters," shall mandatorily require an election as therein provided. Section 1.05 of the act provides that: "At *such* election" the proposition to be submitted shall be printed on the ballot as specified.

Act No. 452 provides for cities of over 200,000 population, a method of adopting the mayor-council form of government. Section 1.02 of the act provides that the filing of the specified petition, "asking that the proposition of the adoption of the Mayor-Council form of government * * * be submitted to the qualified voters," shall mandatorily require an election as therein provided. Section 1.05 of the act provides that "At *such* election" the proposition to be submitted shall be printed on the ballot as specified.

It is not insisted that Act 518 and Act 452 are in conflict. We do not think they are. Act No. 518 provides for submission of one proposition; Act No. 452 for submission of another proposition. Neither act undertakes, so far as we are advised, to forbid the holding of any other type of election for submission of propositions to determine what form of government the city of over 200,000 population shall adopt. The

form of ballot provided in each act is to be used at "such" election, that is, an election based on the petition specified in the act. In one act, the petition is to submit the proposition of adoption of the council-manager form; in the other act, the Mayor-Council form. The ballot to be used depends on the issue specified in the petition.

Act No. 434 provides for the submission, in one election, of three alternatives. The language of Section 1 is, that, "In any election held under the provisions of any act heretofore or hereafter adopted for the purpose of authorizing a change in the form of government of any city with a population of 200,000 inhabitants or more * * * *the electorate * * * shall be entitled to choose,"* between three forms of government. This language does not say that no other proposition can be presented to the electorate under any other act. The provision of Section 2 is, that "In any *such* election," the ballot shall present the three propositions as set out in the form of ballot to be used. "Such" election in Section 2 can only refer to the election authorized in Section 1, that is, an election permitting a choice between the three forms. Section 2 contains specific reference to Act No. 518, (1953) and to Act No. 452, (1955). Act No. 518 had already been enacted two years before. Act No. 452 became law thirty-four minutes later.

Act No. 434 and Act No. 452 are to be construed in pari materia and conflicts avoided if the language reasonably permits such construction. If Act No 452 expressly repeals any other act, we have not found such expression. If Act No. 452 repeals Act No. 434, such repeal must be by implication.

What is inconsistent in a law which provides one method of presenting for a vote a certain specified proposition, and another method of presenting for a vote a different proposition or propositions? We do not think there is an inconsistency in such a law.

The three acts, 518, 434, and 452 provide, as we view it, three alternative methods permitting the voters to decide what form of city government they desire. The permitting of one method is not inconsistent with permitting also another method or methods. So construed, there is no conflict between the acts in the particular here insisted on, that is, the form of ballot.

For each method there is a separate form provided. The form to be used in each case depends on the form of the petition contemplated in each act, respectively.

The record shows in the instant case that the petition, under which the November 6, 1962, election was held, recited as follows:

> " 'Complainants' Exhibit 1
>
> " '*Petition for Election*
>
> " '(Under Acts of Ala 1955, p 980 et seq. and p. 1004 et seq.)
>
> " 'The undersigned qualified electors of the City of Birmingham, Alabama, together with other qualified electors of such city signing this petition by separate pages, hereby petition and ask that the proposition of the adoption of the mayor-council form of government for the City of Birmingham, Alabama, be submitted to the qualified voters of said city in an election in which the electorate of such city shall be entitled to choose between the commission form of government, the mayor-council form of government, and the council manager form of government, as required by law.' "

That petition asks for an election using the form of ballot prescribed by Act No. 434. The averments are that such a ballot was used. We hold it was the proper form under the instant petition copied supra.

The conclusion that the legislature did not intend for Act No. 452 to repeal Act No. 434 is fortified by the fact that in 1961 the legislature passed two acts amending the 1955 Acts.

Act No. 1029, approved September 9, 1961, at 11:27 a. m., Acts of Alabama 1961, page 1615, amended the title and Section 1

of Act No. 434. The title was amended to make the act apply to cities of 300,000 population instead of 200,000 population. Section 1 of Act No. 434 was amended to read as follows:

> " 'Section 1. In any election held under the provisions of any act heretofore or hereafter adopted for the purpose of authorizing a change in the form of government of any city with a population of 300,000 inhabitants or more according to the last or any succeeding federal census, the electorate of such city shall be entitled to choose at' such election between the Commission form of government, the Mayor Council form of government and the Council Manager form of government.' "

Act No. 1030, approved September 9, 1961, at 11:28 a. m., 1961 Acts, page 1616, amends the title and section 1.01 of Act No. 452. The amendment purports to make Act No. 452 apply also to cities of over 300,000.

It is not reasonable to suppose that the legislature would in 1961, undertake to amend a section of an act which the legislature intended to repeal five years earlier.

We hold that Act No. 452 did not repeal Act No. 434, that they are not in conflict as to the form of ballot, and that the November 6, 1962, election was legal and valid.

■ On the second declaration here contested, that is, that Act No. 71 can in no way be effective to prevent any legally elected Mayor or Councilman from taking office under Act No. 434 and Act No. 452, we are of opinion that the court was without authority to so declare, because necessary parties were not before the court, and because quo warranto, not declaratory judgment, is the exclusive remedy to determine whether or not a party is usurping a public office. Talton v. Dickinson, 261 Ala. 11, 72 So.2d 723.

The plaintiffs have not shown that they have any interest in either the office of com-

missioner under the present form of the city's government, or in the office of mayor or councilman under the changed form of that government. Plaintiffs present no justiciable controversy with respect to any right of theirs.

> "It is an essential condition of the right to invoke judicial relief that the plaintiff have a protectible interest. The fact that under declaratory procedure so many types of legal issues are presentable for determination which are incapable of any other form of relief, has imposed upon the courts at the outset the function of determining whether the facts justify the grant of judicial relief, and more particularly, whether the plaintiff has a 'legal interest' in the relief he seeks. * * * " Declaratory Judgments, Borchard, pages 48, 49.

Plaintiffs have shown no such interest in the time when the mayor and councilmen who are to be elected take office. State ex rel. Thomas v. Gunter, 170 Ala. 165, 54 So. 283; Talton v. Dickinson, supra.

There is no defendant who has an interest in the time when the term of the incumbent commissioners expires, or the term of the mayor and councilmen yet to be elected, begins. The real parties in interest on this point are the incumbents and those who are to be elected to succeed them. None of these is party to this action.

It is true that one of the present commissioners, in his official capacity, is a party, to wit, "Arthur J. Hanes, as Mayor and Chief Executive Officer of Birmingham," but he is not a party in his individual capacity or private right. The other two commissioners are not parties at all.

A noted writer on declaratory judgments has said:

> "It has already been observed that an action for a declaratory judgment must exhibit all the usual conditions of an ordinary action, except that accomplished physical injury need not necessarily be alleged. It is sufficient if a dis-

pute or controversy as to legal rights is shown, which, in the court's opinion, requires judicial determination—that is, in which the court is convinced that by adjudication a useful purpose will be served. The requisites of justiciability must be present.

"Not only must the plaintiff prove his tangible interest in obtaining a judgment, but the action must be adversary in character, that is, there must be a controversy between the plaintiff and a defendant, subject to the court's jurisdiction, having an interest in opposing his claim. Unless the parties have such conflicting interests, the case is likely to be characterized as one for an advisory opinion, and the controversy as academic, a mere difference of opinion or disagreement not involving their legal relations, and hence not justiciable." Declaratory Judgment, Borchard, pages 29, 30.

█ █ A declaratory judgment establishing a legal relation or legal status is a legal, and not an equitable judgment, although the trial, if by the court without a jury, is to be in accordance with the practice for trials in equity cases. 26 C.J.S. Declaratory Judgments § 1, p. 51. The instant trial was at law, but we are of opinion that the rules as to parties in equity cases applies here.

█ The general rule in a court of equity is that all persons having a material interest, legal or equitable, in the subject matter of a suit, must be made parties, either as plaintiffs or defendants. The rule proceeds on the principle that no man's rights should be controverted in a court of justice unless he has full opportunity to appear and vindicate them; and further, that complete justice may be done and future litigation avoided, the performance of the decree being safe, because of the presence in court of all parties who have an interest in its subject matter. The general rule further is that if a bill is defective for the want of proper parties, advantage should be taken of the defect by plea,

demurrer, or answer, and if not so taken, the objection is waived. The rule is subject to the exception that if a cause cannot be properly disposed of, on the merits, without the presence of the absent parties, the objection may be made at the hearing, or on error, it may be taken by the court ex mero motu. Prout v. Hoge, 57 Ala. 28. See also: Batre v. Auze's Heirs, 5 Ala. 173; Mc-Maken v. McMaken, 18 Ala. 576; Woodward v. Wood, 19 Ala. 213; McCully v. Chapman, 58 Ala. 325; Watson v. Oates, 58 Ala. 647; Amann v. Burke, 237 Ala. 380, 186 So. 769; Matthews v. Matthews, 247 Ala. 472, 25 So.2d 259; Garrison v. Kelly, 257 Ala. 105, 57 So.2d 345; Rollan v. Posey, 271 Ala. 640, 126 So.2d 464.

█ On the issue of when the new term begins, there is no party on either side who has an interest such as will make this action present a justiciable controversy. Dietz v. Zimmer, 231 Ky. 546, 21 S.W.2d 999; Coleman v. Henry, 184 Tenn. 550, 201 S.W.2d 686; Fisher v. Kallenbach, 135 Conn. 147, 62 A.2d 336.

This court has said:

"* * * Upon the reasoning in Birmingham Bar Association v. Phillips & Marsh, 239 Ala. 650, 196 So. 725, we entertain the view that a proceeding in quo warranto, Title 7, § 1133 et seq., is the exclusive remedy to determine whether or not a party is usurping a public office. See also Seavey v. Van Hatten, 276 App.Div. 260, 94 N.Y.S.2d 402. We do not think the 1947 amendment to § 167, Title 7, relating to the construction of the Declaratory Judgments Act can be construed as bringing about a change of the law enunciated in Birmingham Bar Association v. Phillips & Marsh, supra, in view of the rationale therein employed." Talton v. Dickinson, supra, 261 Ala. at page 14, 72 So.2d 723, 726.

█ The issue, as to when the terms of those to be elected mayor and councilman

begins, is essentially a contest between them and the present commissioners to determine whether or not one or more of them is usurping a public office.

On authority of Talton v. Dickinson, supra, we hold that such issue must be judicially determined in a proceeding in quo warranto between the real parties in interest who are not parties in the instant case.

We affirm the declaration that the election held on November 6, 1962, was legal and valid.

The judgment will be modified, however, to eliminate therefrom all declarations relating to the time when the term of the mayor and councilmen yet to be elected will begin.

As modified, the judgment is affirmed.

Modified and affirmed.

LIVINGSTON, C. J., and SIMPSON and MERRILL, JJ., concur.

LAWSON, GOODWYN and HARWOOD, JJ., dissent in part.

LAWSON, Justice (dissenting in part).

The question of proper or necessary parties has not been argued in this court. Apparently all parties to the litigation are in agreement that they are entitled under the provisions of § 157, Title 7, Code 1940, to a construction of the several statutes involved in the litigation.

The court has construed Acts 434 and 452 of the 1955 Legislature (Act 434, approved September 9, 1955, General Acts 1955, Vol. II, p. 980; Act 452, approved September 9, 1955, General Acts 1955, Vol. II, p. 1004) in such a way as to uphold the validity of the election of November 6, 1962. That holding is tantamount to a declaration of the validity of the election to be held on March 5, 1963. But the court has refused to construe the provisions of Act 71 of the 1959 Legislature (Act 71, approved June 18, 1959, General Acts 1959, Vol. I, p. 477), thereby leaving unanswered the question as to whether the provisions of Acts 434 and 452, supra, or those of Act 71, supra, control the time when the persons elected in the election of March 5, 1963, or in any run-off election, shall take office.

I am of the opinion that the parties to this litigation were sufficient to give the trial court jurisdiction to determine the question as to whether Act 71, supra, supersedes in any way the provisions of the 1955 acts, supra. This litigation is not in the nature of a quo warranto proceeding. Only a question of statutory construction is involved and I am at a loss to understand the court's holding to the effect that the statute will not be construed.

This cause was submitted in this court on Tuesday, February 26, 1963, and was brought up in consultation by the author on Friday, March 1, 1963. The election is set for Tuesday, March 5, 1963. Hence time does not permit a detailed discussion of the question as to whether or not Act 71, supra, in any way supersedes or repeals the provisions of Acts 434 and 452, supra. I entertain the view, however, that the trial court was correct in its declaration to the effect that Act 71, supra, a general act, does not repeal by implication any of the provisions of Acts 434 and 452, supra, both of which affect a limited territory, although general in form. Tucker v. McLendon, 210 Ala. 562, 98 So. 797.

The effect of the court's opinion is to leave the citizens of the state's largest city in doubt as to the body which shall govern them following the forthcoming election to be held on March 5, 1963, or any run-off election which may follow.

It seems to me to be highly regrettable that the court decided to construe Acts 434 and 452, supra, and yet at the same time refuse to construe the effect of Act 71, supra, upon Acts 434 and 452, supra, thereby creating a rather chaotic condition for the City of Birmingham.

I would affirm the decree of the trial court in all respects.

GOODWYN and HARWOOD, JJ., concur in the foregoing views.